0Thad M. Scroggins, Esq., SBN 299453
**THE LAW OFFICE OF THAD M. SCROGGINS**
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
Tel: (626) 993-6715
Fax: (626) 226-5594
thad@scrogginsesq.com

Attorney for Plaintiff, MMAS Research LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF WOLVERHAMPTON; DONALD E. MORISKY, an individual; PHILIP MORISKY, an individual; MORISKY MEDICATION ADHERENCE RESEARCH LLC, a Nevada limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-05141<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Breach of Contract**<br>2. **Copyright Infringement Under 17 U.S.C. §§ 101,** *et seq.*<br>3. **Tortious Interference with Contract**<br>4. **Unfair Competition under Business and Professions Code §17200,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff MMAS RESEARCH LLC, by and through its undersigned attorneys, complains and alleges as follows:

    1.    Plaintiff MMAS RESEARCH LLC (referenced herein as "MMAS Research" and "Plaintiff") is a Washington limited liability company.

2. Plaintiff MMAS Research is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright"). The Morisky Widget is an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors, as further described below, and which includes registered translations of the widely used "Morisky Medication Adherence Scale (8-item)" ("MMAS-8") and "Morisky Medication Adherence Scale (4-item)" ("MMAS-4") tests, along with other validated assessments, specifically the Clinically Useful Depression Outcome Scale (CUDOS) and Clinically Useful Anxiety Outcome Scale (CUXOS) assessments, which are included in the registered source code of the Morisky Widget as part of its federal copyright registration.

3. On April 15, 2022, United States Magistrate Judge David W. Christel of the United States District Court, Western District of Washington at Tacoma, issued a Report and Recommendation in case no. 2:21-CV-1301-RSM-DWC ("Report and Recommendation"), a dispute between Plaintiff and Donald Morisky, which acknowledged that "MMAS Research LLC holds the Copyright Registration to the Morisky Widget…."  Report and Recommendation at page 6, line 22.  Further, the Magistrate Judge acknowledged that "the Morisky Widget is exclusively in [MMAS Research LLC's] control…" Report and Recommendation at page 8, line 16. A true and accurate copy of the aforementioned "Report and Recommendation" is attached hereto as <u>Exhibit A</u>.

4. Defendant UNIVERSITY OF WOLVERHAMPTON ("Wolverhampton") is a public university located at Wulfruna Street, WV1 1LY UK.

5. Defendant DONALD E. MORISKY ("Donald Morisky") is an individual and resident of the State of Nevada.

6. Defendant PHILIP MORISKY ("Philip Morisky") is an individual and resident of the State of California.

/ / /

7. Defendant MORISKY MEDICATION ADHERENCE RESEARCH LLC ("MMAR") is a Nevada limited liability company with offices located at 294 Lindura Court, Las Vegas, NV, 89138.

8. Together, Defendants Wolverhampton, Donald Morisky, Philip Morisky, and MMAR are referred to herein as "Defendants" and individually as a "Defendant" in this Complaint.

9. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have infringed the copyrights that are the subject of this lawsuit, have contributed to the infringement of the aforementioned copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when their identities have been determined.

10. Defendants and Does 1 through 10 are collectively referred to as "Defendants" herein.

11. Plaintiff is informed, believes, and thereupon alleges that Defendants were and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damages caused by Defendants and are, therefore, liable for the damages caused to Plaintiff.

12. Plaintiff is informed, believes, and thereon alleges Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damages to Plaintiff.

13. Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts or conduct alleged herein.

/ / /

/ / /

## JURISDICTION AND VENUE

14. This action arises, in part, under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq.*, conferring federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367. Additionally, this Court has original jurisdiction over this controversy for misappropriation of trade secrets claims pursuant to 18 U.S.C. § 1836(c).

15. Venue is proper in this District pursuant to 28 U.S. C. §§ 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have had or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the parties in this District and; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

16. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendant corporation is amenable to personal jurisdiction in this District.

## ALLEGATIONS COMMON TO ALL CLAIMS

### A. Morisky Medication Adherence Scales and the Morisky Widget

17. Plaintiff MMAS Research was founded by Steven Trubow. Prior to this, Mr. Trubow was the Chief Technology Officer (CTO) of TAL Digital Solutions in San Francisco, California (TAL).

18. Mr. Trubow's technological competence is of a very high level. For example, while serving as CTO for TAL, Mr. Trubow led a team of 40 international engineers in Cabo San Lucas, Mexico to provide a post 9-11 real-time risk management system featuring an unprecedented level of security for Presidents George Bush (USA) Jiang Zemin (China), and Vicente Fox (Mexico), among 18 other foreign leaders attending the 2002 Asia-Pacific Economic Cooperation (APEC) Ministerial Meeting.

19. As the principal of MMAS Research, Mr. Trubow and the MMAS Research team focused on the problem of medication-taking behavior by patients with chronic and infectious diseases.

20. The result of this research and development was the Morisky Widget, a cloud-based system for assessing and optimizing medication adherence for specific patients based on a set of criteria whose predictive validity has been established at over 90%.

21. The Morisky Widget generates these assessments by integrating numerous novel electronic translations and original source code with scoring and coding of its own proprietary MMAS-4 and MMAS-8 tests, along with other widely-used tests in the field, specifically the Clinically Useful Depression Outcome Scale (CUDOS) and Clinically Useful Anxiety Outcome Scale (CUXOS), the National Institute of Drug Abuse Modified Assist Screen (NIDA-Modified ASSIST), and the Columbia-Suicide Severity Rating Scale (C-SSRS).

22. The above-mentioned diagnostic assessments are included in the registered source code of the Morisky Widget as part of its federal copyright registration.

23. The Morisky Widget includes dimensional scoring, unintentional and intentional non-adherence for the Morisky Widget MMAS-4 and MMAS-8 tests and the severity of Depression and Anxiety by assessing CUDOS and CUXOS.

24. Plaintiff MMAS Research has licensed use of the Morisky Widget to pharmaceutical firms, hospitals and universities, including the University of Wolverhampton, in over 80 languages and 100 countries. A true and accurate screen capture of Plaintiff's client list, located at Morisky.org/about, is attached hereto as Exhibit B.

### B. Copyrights

25. To protect the integrity of the Morisky Widget and protect against counterfeit, infringing, or unauthorized use, Plaintiff MMAS Research filed for and

obtained a certificate of registration for the Morisky Widget Copyright from the United States Copyright Office.

26. The Morisky Widget Copyright includes the source code of the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, MMAS-4, MMAS-8, CUDOS, CUXOS, C-SSRS, and NIDA-Modified ASSIST.

27. Plaintiff MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq*. and all other laws governing copyrights as to the Morisky Widget Copyright.

28. Plaintiff MMAS Research has been, and still is, the author and exclusive holder of all rights, title, and interest in and to the copyrights to the Morisky Widget.

29. The Morisky Widget diagnostic assessments and the Morisky Widget Copyright are vital to Plaintiff's ongoing businesses and, more specifically, Plaintiff's efforts to ensure that third-party use of the Morisky Widget source code is authorized by Plaintiff and used in compliance with Plaintiff's strict coding and scoring in the Morisky Widget.

## C. Licenses

30. Plaintiff permits use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program memorialized in a licensing agreement.

31. Plaintiff grants clinics, practitioners, and similar organizations limited-use perpetual licenses for the Morisky Widget that impose restrictions on the use and disclosure of the coding and scoring of the Morisky Widget diagnostic assessments.

32. The terms of the licenses granted by Plaintiff are designed not only to protect federally registered rights, but also to protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

33. All Morisky Widget licensees are required to score and code diagnostic assessments, MMAS-4, MMAS-8, CUDOS, CUXOS, C-SSRS, and NIDA-Modified

ASSIST in the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it on patients.

34. Licenses for the Morisky Widget are typically structured as a fee for a perpetual license, and there is a charge for each test administered by a licensee, in addition to those included in the cost of the license.

35. Plaintiff also charges fees for training and certification in use of the Morisky Widget.

36. The license agreement between Plaintiff and Defendant discussed below expressly forbids disclosure of the Morisky Widget diagnostic assessments coding and scoring without Plaintiff's permission.

37. Due to Plaintiff's consistent employment of a strict regimen of licensing and supervision, the Morisky Widget has enormous value both economically and for the promotion of health and proper diagnosis of persons suffering from a wide range of chronic and infectious diseases and mental health conditions worldwide.

### D. Defendant Wolverhampton's Publication of the Thesis and the First and Second Study Postings

38. On or about September 2019, Wolverhampton began conducting a study in which it used Morisky Widget MMAS tests (the "Study").

39. On or about February 2021, Wolverhampton published a thesis based on the results of the Study entitled "The impact of mental ill health on medication adherence level in patients diagnosed with type 2 diabetes" (the "Thesis") on its open repository website. A true and accurate copy of the Thesis, located online at https://wlv.openrepository.com/handle/2436/624763, is attached as Exhibit C.

40. In the Thesis, Wolverhampton acknowledges that "[t]he researcher received full training on MMAS-8 and certification by the provider Mr Steven Trubow." *See* the Thesis, page 81.

///
///

41. In the Thesis, Wolverhampton acknowledges its use of the CUDOS and CUXOS in the Study. *See* the Thesis, pages 81, 88, 143, 268. The CUDOS and CUXOS are only available in the Morisky Widget.

42. In the Thesis, Wolverhampton acknowledges its use of the "widget" in the Study. *See* the Thesis, page 141.

43. In the Thesis, Wolverhampton acknowledges the usefulness of the "widget" in dealing with the COVID-19 pandemic. *See* the Thesis, page 429.

44. On September 10, 2021, Hana Morrissey of Wolverhampton sent an email to MMAS Research, seeking its approval of the following acknowledgment to be included in the upcoming publication of an article based on the results of the Study, entitled "Impact of Mental Ill Health on Medication Adherence Behaviour in Patients Diagnosed with Type 2 Diabetes" (the "First Article"):

> We wish to acknowledge MMAS Research LLC for the use of ©Morisky Widget MMAS-8 software. Morisky Widget MMAS-8 software is protected by U.S. copyright and trademark laws. Permission for use of Morisky Widget MMAS-8 software copyright registration number TX 8-816-517 is required and was obtained for this research. A license agreement is available from MMAS Research LLC 14725 NE 20th St Bellevue, WA 98007, USA; strubow@morisky.org. we would like to express our gratitude to Steve Trubow for the generous training and the timely licence provision.

45. On September 10, 2021, MMAS Research approved Wolverhampton's use of the aforementioned acknowledgment in the First Article (the "Approved Acknowledgment").

46. On or about October 2021, Wolverhampton published the First Article on its open repository website and correctly included the Approved Acknowledgment. A true and accurate copy of the First Article is attached as Exhibit D.

47. On or about October 2021, Wolverhampton also published the First Article on the Archives of Pharmacy Practice website and correctly included the Approved Acknowledgment.

48. On or about December 1, 2021, Wolverhampton published the results of the Study in a second article entitled "Impact of Mental Ill Health on Medication Adherence Behaviour in Patients Diagnosed with Type 2 Diabetes" (the "Second Article") on its open repository website. A true and accurate copy of the Second Article, located online at https://wlv.openrepository.com/handle/2436/624505, is attached as Exhibit E.

49. Upon information and belief, the Second Article is substantially similar, if not identical, to the First Article, with one major exception: the acknowledgment section. Upon Wolverhampton's publication of the Second Article, Wolverhampton did not include the Approved Acknowledgment. Instead, it included the following acknowledgment (the "Fraudulent Acknowledgment"):

> The use of the MMAS-8 for this study was granted by Dr Donald Morisky. The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC., Donald E. Morisky, ScD, ScM, MSPH, donald.morisky@moriskyscale.com. (© 2006 Donald E. Morisky)

50. The Fraudulent Acknowledgement intentionally misrepresents facts, including but not limited to, the facts that it was the Morisky Widget that was used in the Study and that MMAS Research is in control of granting permissions. Donald Morisky and MMAR were not involved in the Study.

51. On or about December 2021, Wolverhampton also published the Second Article, with the Fraudulent Acknowledgment, on the Archives of Pharmacy Practice website. A true and accurate copy of the Second Article, located online at https://archivepp.com/article/impact-of-mental-ill-health-on-medication-adherence-behaviour-in-patients-diagnosed-with-type-2-diab-qxkxh3sgwusjod5?html, is attached as Exhibit F.

52. Upon information and belief, Wolverhampton removed the First Article on the open repository website, which correctly included the Approved Acknowledgment.

53. Upon information and belief, Wolverhampton removed the First Article on the Archives of Pharmacy Practice website, which correctly included the Approved Acknowledgment.

# FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (BY PLAINTIFF AGAINST DEFENDANT WOLVERHAMPTON)

54. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

55. On June 9, 2018, Wolverhampton entered into a contract with MMAS Research for a limited-use license granting Wolverhampton the right to administer, score and code, in the Morisky Widget, the MMAS-8, CUDOS, CUXOS, CSSRS, and NIDA-Modified ASSIST under very specific conditions (the "Agreement"). A true and accurate copy of the Agreement is attached as Exhibit G.

56. As stated in Section II(B) of the Agreement, Wolverhampton "agrees to adhere to all the terms and requirements of the Morisky Widget license, the copyright and the trademark guidelines in Appendix 1 for publications and poster presentations."

57. In breach of Section II(B) of the Agreement, Wolverhampton did not adhere to all the terms and requirements of the Morisky Widget license, the copyright and the trademark guidelines in Appendix 1 for publications and poster presentations, as evidenced by the conduct described herein and the exhibits attached hereto.

58. Further, the Agreement requires Wolverhampton to submit any publications to MMAS Research for review to make sure copyright and TM notices are correct. As stated in Section III(A) of the Agreement:

> All licensees must submit to MMAS Research all manuscripts that are being considered for publication to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication…

59. In breach of Sections II(B) and III(A) of the Agreement, Wolverhampton did not submit the Second Article, which contained the Fraudulent Acknowledgment, to

MMAS Research for review before publication. MMAS Research never saw or approved the Fraudulent Acknowledgment before its publication.

60. In further breach of Sections II(B) and III(A) of the Agreement, Wolverhampton did not include the Approved Acknowledgment in the Second Article.

61. Further, as stated in Section II(I) of the Agreement:

> In case of scientific, administrative, or intellectual property misconduct in using the Morisky Widget, the MMAS4 and MMAS-8, Licensor reserves the right to withdraw permission for use and to pursue all legal remedies.

62. In breach of Sections II(B) and II(I) of the Agreement, Defendant Wolverhampton engaged in administrative and intellectual property misconduct as evidenced by its conduct described herein, including, but not limited to, replacing the Approved Acknowledgment with the Fraudulent Acknowledgment on the Second Article.

63. Pursuant to its rights under Section II(I) of the Agreement, MMAS Research has withdrawn permission for Defendant Wolverhampton to use the Morisky Widget.

64. Plaintiff MMAS Research fully performed all of its obligations pursuant to the Agreement.

65. Defendant Wolverhampton did not fulfill its obligations pursuant to the Agreement.

66. As a result of Defendant Wolverhampton's breaches of the Agreement, Plaintiff MMAS Research has suffered general, direct, and consequential damages, including the expenditure of attorney's fees, those damages all in an amount to be proven at trial.

/ / /
/ / /
/ / /

# SECOND CAUSE OF ACTION
# COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101, *et seq.*)
# (BY PLAINTIFF AGAINST DEFENDANTS)

67. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

68. At all times relevant hereto, Plaintiff MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget and all derivative works. Plaintiff MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and all other laws governing copyright.

69. Plaintiff MMAS Research is informed and believes and thereon alleges that Defendants, without authorization, have infringed and will continue to infringe the Morisky Widget Copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same outside of the confines of the Agreement or any other valid agreement.

70. Due to Defendant Wolverhampton's engaging in administrative and intellectual property misconduct as evidenced by its conduct described herein, MMAS Research, pursuant to its rights under Section II(I) of the Agreement, has withdrawn permission for Defendant Wolverhampton to use the Morisky Widget.

71. Accordingly, Defendant Wolverhampton does not have a license to use the Morisky Widget Copyright.

72. Defendant Wolverhampton has used the Morisky Widget to conduct no less than 2,227 tests. A true and accurate copy of a report of the number of tests is attached as <u>Exhibit H</u>. Thus, Defendant Wolverhampton has committed no less than 2,227 copyright infringements.

73. Upon information and belief, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, aided and abetted Defendant Wolverhampton in its administrative and intellectual property misconduct by directing it to replace the

Approved Acknowledgment with the Fraudulent Acknowledgment on the Second Study Posting.

74. Upon information and belief, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, directed Wolverhampton to improperly replace MMAS Research's Morisky Widget Copyright notice with Donald Morisky's copyright notice on the Second Study Posting.

75. Defendants' infringement of the Morisky Widget Copyright was intentional, knowing, willful, and malicious.

76. Plaintiff MMAS Research is entitled to an injunction restraining Defendants and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

77. As a direct result of Defendants' infringement, Plaintiff MMAS Research has sustained damages in an amount to be determined at trial.

78. Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, Plaintiff MMAS Research is entitled to an award of actual damages, injunctive relief, the impoundment and destruction of the infringing materials, and its attorneys' fees and costs against all Defendants.

79. Plaintiff MMAS Research is entitled to statutory damages for infringement of the Morisky Widget Copyright by Defendants.

## THIRD CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT
## (BY PLAINTIFF AGAINST DEFENDANTS DONALD MORISKY, PHILIP MORISKY, AND MMAR)

80. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

81. The Agreement was executed between MMAS Research and Wolverhampton.

///

82. Defendants Donald Morisky, Philip Morisky, MMAR, and Does 1 – 10, were aware of the Agreement.

83. On or about October 30, 2021, Defendants Donald Morisky, Philip Morisky, and MMAR and Does 1 – 10, under the title "Significant legal developments with phasing-out the Morisky Widget", posted the following statement on www.moriskyscale.com (the "MMAR Website"):

> Effective November 2021, I have phased-out the Morisky Widget. Under the settlement agreement with Steven Trubow, MMAS Research LLC was required to transfer the Morisky Widget (all MMAS 4 and 8 derivatives) to Dr. Morisky by September 2021. The derivatives include the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub-licenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.
>
> While, Steven Trubow has very limited authorization to investigate and pursue infringement cases prior to December 2020, his involvement will completely terminate in 2023. I remain the sole developer/owner/licensor of the Morisky Medication Scales 4 and 8.
>
> We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform - within the next 45 days. You may receive an email from Philip Morisky, CEO of MMAR LLC, if you would like to commence the process. The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPAA). You can reach us on our website at www.moriskyscale.com.
>
> Thank you very much for your understanding and cooperation as we transition widget licenses into our company's operations.
>
> Dr. Donald Morisky
> President MMAR, LLC

A true and correct copy of the aforementioned post is located at https://www.moriskyscale.com/notice-to-clients#/.

84. Upon information and belief, on or about October 2021, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, contacted Wolverhampton by direct email and informed them of the aforementioned post, as well as further disparaged MMAS Research, further damaged MMAS Research's business relationship with Wolverhampton, and threatened litigation against Wolverhampton.

85. On or about December 26, 2021, Defendants Donald Morisky, Philip Morisky, and MMAR and Does 1 – 10, under the title "Update on the Morisky Widget Being Phased out of Existence", posted an additional statement on the MMAR Website:

> Effective immediately, the Morisky Widget is being phased out of existence.  Under the settlement agreement with Steven Trubow signed December 2020, MMAS Research LLC was required to transfer all MMAS 4 and 8 derivatives to Dr. Morisky by September 2021, including the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub-licenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.
>
> Steven Trubow has very limited authorization to investigate  specific infringement cases  prior to December 2020, terminating in 2023.  He is not authorized to issue new MMAS 4 and 8 licenses, only retroactive licenses relating to infringement cases. I remain the sole developer/owner/licensor of the Morisky Medication Adherence Scales 4 and 8 and derivatives.
>
> We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform.  Philip Morisky, CEO of MMAR, LLC, will notify Morisky Widget clients of this legal development and assist them in the transition process to avoid unnecessary  infringement claims.   Thank you very much for your understanding and cooperation during this transition period.
>
> Dr. Donald Morisky
> President MMAR, LLC

1 | A true and correct copy of the aforementioned post is located at
2 | https://www.moriskyscale.com/notice-to-clients#/.

86. Upon information and belief, before Wolverhampton's publication of the Second Article, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, directed Wolverhampton to replace the Approved Acknowledgment with the Fraudulent Acknowledgment.

87. Upon information and belief, as a direct result of Wolverhampton having received the aforementioned direction from Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, Wolverhampton replaced the Approved Acknowledgment with the Fraudulent Acknowledgment in the Second Article.

88. Upon information and belief, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, directed Wolverhampton to breach the Agreement and replace it with a license for MMAR's digital platform.

89. By the conduct described herein and the exhibits attached hereto, Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, prevented performance or made performance of the Agreement impossible.

90. Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, intended to disrupt performance of the Agreement, ultimately inducing Wolverhampton not to perform its obligations under the Agreement.

91. Defendants Donald Morisky, Philip Morisky, MMAR and Does 1 – 10, have interfered for an improper purpose or used improper means.

92. As a direct and foreseeable consequence of the intentional interference by Defendants Donald Morisky, Philip Morisky, MMAR, and Does 1 – 10, Plaintiff has suffered general, direct, and consequential damages, including the expenditure of attorney's fees, those damages all in an amount to be proven at trial.

/ / /

/ / /

/ / /

# FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION
## [BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.]
### (BY PLAINTIFF AGAINST DEFENDANTS)

93. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

94. Defendants have committed all of the aforesaid acts willfully, maliciously, and oppressively, without regard to Plaintiff's legal, contractual, and exclusive proprietary rights.

95. Defendants' acts and practices as detailed above constitute acts of unlawful, unfair, or fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200.

96. Pursuant to California Business and Professions Code §17203, Plaintiff seeks an order from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth herein.

97. Plaintiff has incurred and will continue to incur attorney fees in enforcing the rights described herein and seek recovery of their attorney fees incurred pursuant to Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants as follows:

1. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff's Morisky Widget Copyright, in accordance with proof at trial;

2. For statutory damages for copyright infringement of the Morisky Widget Copyright by Defendants;

3. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives,

servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining them to:

    a. Refrain from using the Morisky Widget, Morisky Widget translations, and Morisky Widget diagnostic assessments until corrective measures are agreed upon, including the maintenance on websites, posted on the Internet, or in any publication, the articles, publications, and reports described herein, or any such articles, publication, and reports in the future which use or reference the Morisky Widget or Morisky Widget diagnostic assessments;

    b. Deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles, reproductions, or duplicates of any work shown by the evidence to infringe the Morisky Widget.

4. Order that Defendants file with this Court and serve upon Plaintiff within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

5. Order declaring that Defendants have infringed the Morisky Widget Copyright.

6. Order declaring that Defendant Wolverhampton has breached the Agreement and a finding that MMAS Research has been damaged by the acts by Defendant Wolverhampton;

7. Order declaring that Defendants Donald Morisky, Philip Morisky, MMAR, and Does 1 – 10, have tortuously interfered with MMAS Research in its efforts to perform the Agreement and a finding that MMAS Research has been damaged by the acts by Defendants Donald Morisky, Philip Morisky, MMAR, and Does 1 – 10;

8. Order for Defendants to account for and disgorge to MMAS Research all profits derived by Defendants from their unlawful acts;

9. For compensatory damages in an amount according to proof at trial;

10. For costs of suit herein incurred;

11. For attorneys' fees;

12. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

13. For such other and further relief the Court deems just and proper.

Plaintiff demands a jury trial on all issues so triable.

Dated: July 25, 2022            **THE LAW OFFICE OF THAD M. SCROGGINS**

By: /s/ Thad M. Scroggins
Thad M. Scroggins, Esq.
Attorney for Plaintiff,
MMAS RESEARCH LLC