Paul S. Haberman, Esq., *Pro Hac Vice*
**THE LAW OFFICES OF PAUL S. HABERMAN LLC**
19 Engle Street, Tenafly, New Jersey 07670 (All Mail)
88 Pine Street, 22nd Floor, New York, New York 10005
Tel: (201) 564-0590
Fax: (201) 767-2087
psh@paulhabermanlaw.com

Attorney (*Pro Hac Vice*) for Plaintiff, MMAS Research LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF WOLVERHAMPTON; DONALD E. MORISKY, an individual; PHILIP MORISKY, an individual; MORISKY MEDICATION ADHERENCE RESEARCH LLC, a Nevada limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-05141<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT BY DEFENDANTS DONALD E. MORISKY AND MORISKY MEDICATION ADHERENCE RESEARCH LLC**<br><br>DATE: December 9, 2022<br>TIME: 10 a.m.<br>JUDGE: Hon. Andre Birotte, Jr.<br>CTRM: 7B |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………..v

PRELIMINARY STATEMENT……………………………………………….1

STATEMENT OF MATERIAL FACTS………………………………………2

    Plaintiff's Intellectual Property Rights/Standing…………………………..2

    Facts as to Personal Jurisdiction……………………………………………7

    Facts as to MMAS Research LLC v. The Charite………………………….8

    Specific Factual Allegations as to Moving Defendants' Infringing Activity……….8

    Facts as to the First to File Assertion………………………………………9

STANDARDS OF REVIEW…………………………………………………10

ARGUMENT…………………………………………………………………13

I.     PLAINTIFF HAS STANDING TO BRING THE COPYRIGHT
      INFRINGEMENT CLAIMS, AS MOVING DEFENDANTS'
      ARGUMENTS ARE BASED ON A MISLEADING RECITATION
      OF THE COMPONENTS OF AND RIGHTS TO AND IN
      THE MORISKY WIDGET……………………………………………..13

II.    PLAINTIFF CAN READILY ALLEGE AND DEMONSTRATE
      PERSONAL JURISDICTION OVER MOVING DEFENDANTS, WHO
      HAVE MISCONSTRUED MATERIAL INFORMATION ON THEIR
      DOMICILES AND/OR HAVE COMMITTED INTENTIONAL TORTS
      CALCULATED TO CAUSE INJURY IN THIS DISTRICT……………...14

          i.     Moving Defendants Purposefully Directed Their
               Activities at This District……………………………………15

          ii.    Plaintiff's Lawsuit Arises Out of Moving Defendants'
               Forum-Related Activities……………………………………16

          iii.   Based on the Known Residences of Moving Defendants
               and/or Their Officers, the Exercise of Jurisdiction is
               Reasonable…………………………………………………...16

iv.    Alternatively, if the Court is Not Convinced That Moving
        Defendants Have Done Enough In-State, it Should Find
        That Their Purposeful Acts in Nevada Had Effects in
        California.................................................................................16

III.   AS PERSONAL JURISDICTION CAN BE DEMONSTRATED,
       SO TOO CAN VENUE FOR COPYRIGHT INFRINGEMENT............17

IV.    THE FOUR CORNERS OF THE AMENDED COMPLAINT, AND THE
       EXTRINISIC EVIDENCE PRESENTED HEREIN,
       EXPRESSLY ALLEGE SPECIFIC FACTS SUFFICIENT TO
       STATE A CLAIM FOR RELIEF ON THE COPYRIGHT CLAIMS.........19

       i.     Plaintiff Provides Sufficient Notice to Each Moving Defendant
              as to the Allegations Raised Within the Four Corners of the
              Amended Complaint and the Exhibits Annexed Thereto...............19

       ii.    Plaintiff Alleges Sufficient Fact Demonstrating Copyright
              Infringement as to Moving Defendants, Including
              Misattribution, Which Falls Under U.S. Copyright Laws, as
              Well as Contract Law.....................................................20

V.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER
       PLAINTIFF'S STATE LAW CLAIMS..........................................21

VI.    PLAINTIFF APPROPRIATELY ALLEGED TORTIOUS
       INTERFERENCE WITH CONTRACT AND UNFAIR BUSINESS
       PRACTICES SINCE MOVING DEFENDANTS' PURPORTED
       PROTECTIONS ARE INVALID AS A RESULT OF
       SHAM CLAIMS.............................................................21

VII.   THE FIRST TO FILE DOCTRINE IS INAPPLICABLE HERE,
       AS THE TWO CASES DEAL WITH DEMONSTRABLY
       DIFFFERENT ISSUES.....................................................23

       i.     The Western District of Washington Lawsuit and the Instant
              Matter Were Filed Within a Year of Each Other, Yet Are
              Largely at the Same Stage.................................................23

       ii.    Moving Defendant MMAR is Not a Party in the Western District
              of Washington Matter......................................................23

iii.  While Certain Issues May Be Similar, There are Distinctly
         Different Issues in the Instant Matter as Pertaining to
         Non-Moving Defendant Wolverhampton…………………………..24

VIII.  ANY DISMISSAL OF THE AMENDED COMPLAINT SHOULD BE
         WITHOUT PREJUDICE AS AMENDED WOULD NOT BE FUTILE…..24

IX.  PLAINTIFF TAKES NO POSITION ON WHETHER TO STAY THIS
         CASE PENDING RESOLUTION OF THE WESTERN DISTRICT OF
         WASHINGTON ACTION…………………………………………...25

CONCLUSION…………………………………………………………...26

## TABLE OF AUTHORITIES

**Cases**

Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622 (9th Cir. 1991).............................23

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009)................11

Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd., 191 F. Supp.3d 1007
(N.D. Cal. 2016)...........................................................................................................18

Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995)..........................................................11

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955,
167 L. Ed.2d 929 (2007)...............................................................................................11

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124 (9th Cir. 2010)...........17,18

Brooks v. Lovisa America, LLC, 2022 WL 4387979
(E.D. Cal. September 22, 2022).....................................................................................12

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482,
79 L. Ed.2d 804 (1984).................................................................................................14

Crafty Productions, Inc. v. Fuqing Sanxing Crafts Co. Ltd.,
839 Fed. Appx. 97 (9th Cir. 2020).............................................................................13, 14

Data Disc., Inc. v. Sys. Technology Assoc., Inc., 557 F.2d 1280 (9th Cir. 1997)...........11

Doe v. Holy See, 557 F.3d 1066 (9th Cir. 2009).............................................................13

Doe v. Unocol Corp., 248 F.3d 914 (9th Cir. 2001).......................................................11

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817,
82 L. Ed. 1188 (1938)....................................................................................................22

Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542 (9th Cir. 1994).......12

Greenpeace, Inc. v. The State of France, 946 F. Supp. 773 (C.D. Cal. 1996)...............16

Greenspun v. Del E. Webb Corp., 634 F.2d 1204 (9th Cir. 1980)..............................11

Guaranty Trust Co. v. York, 326 U.S. 99, 65 S. Ct. 1464,
89 L. Ed. 2079 (1945)...................................................................................................22

Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264
(C.D. Cal. 1998)............................................................................................................23

_Imagineline, Inc. v. Cafepress.com, Inc._, 2011 WL 1322525

(C.D. Cal. April 6, 2011)…………………………………………………………...20

_Janus v. Freeman_, 840 Fed. Appx. 928 (9th Cir. 2020)………………………………15, 17

_Kamen v. American Telephone & Telegraph Co._, 791 F.2d 1006 (2d Cir. 1986)………..16

_Kearney v. Foley & Lardner, LLP_, 590 F.3d 638 (9th Cir. 2009)………………………...21

_Kokkonen v. Guardian Life Ins. Co. of Am._, 511 U.S. 375, 114 S. Ct. 1673,
128 L. Ed.2d 391 (1994)……………………………………………………………………12

_Kottle v. Nw. Kidney Ctrs._, 146 F.3d 1056 (9th Cir. 1998)………………………………21

_Lopez v. Smith_, 203 F.3d 1122 (9th Cir. 2000)……………………………………………...12

_Lunn v. City of Los Angeles_, 2022 WL 4357436

(C.D. Cal. September 20, 2022)……………………………………………………………13

_Mavrix Photo, Inc. v. Brand Techs., Inc._, 647 F.3d 1218

(9th Cir. 2011)……………………………………………………………………………14

_McCarthy v. United States_, 850 F.2d 558 (9th Cir. 1988)…………………………………12

_Monier v. United States_, 2017 WL 5569872 (S.D. Cal. November 20, 2017)…………...12

_O'Campo v. Chico Mall, LP_, 758 F. Supp.2d 976 (E.D. Cal. 2010)……………………..22

_Oakley, Inc. v. Trimera Military Technology, Inc._, 2016 WL 8794459

(C.D. Cal. January 22, 2016)……………………………………………………...11, 14

_Oliver v. The Men's Wearhouse_, 2017 WL 2664988 (C.D. Cal. 2017)…………………12

_Picot v. Weston_, 780 F.3d 1206 (9th Cir. 2015)…………………………………………15

_Pinnacle Fitness and Recreation Management LLC v. Jerry
and Vicky Moyes Family Trust_, 2010 WL 514686 (S.D. Cal. December 13, 2010)…10,11

_Roettegen v. Paramo_, 2022 WL 3109576 (S. D. Cal. August 4, 2022)………………….11

_Schwarzenegger v. Fred Martin Motor Co._, 374 F.3d 797 (9th Cir. 2004)…………10,14,15

_SellPoolSuppliesOnline.com v. Ugly Pools Arizona, Inc._, 804 Fed. Appx. 668

(9th Cir. 2020)……………………………………………………………………………20

_Silverman v. Lane_, 2019 WL 40401111 (N.D. Cal. August 27, 2019)…………………...12

_Silvers v. Sony Entertainment Pictures, Inc._, 402 F.3d 881 (9th Cir. 2005)……………...13

_Stevens v. Corelogic, Inc._, 899 F.3d 666 (9th Cir. 2018)…………………………………20

_Stewart v. Screen Gems-EMI Music, Inc._, 81 F. Supp. 938 (N.D. Cal. 2015)……………11

_Swirsky v. Carey_, 376 F.3d 841 (9th Cir. 2004)……………………………………………..19

_Thornhill Pub. Co. v. General Tel. & Elec. Corp._, 594 F.2d 730 (9th Cir. 1979)…………12

_UMG Recordings, Inc. v. Disco Azteca Distributors, Inc._, 446 F. Supp.2d 1164
(E.D. Cal. 2006)……………………………………………………………………………20

_WildEarth Guardians v. U.S. Dep't of Agric._, 795 F.3d 1148 (9th Cir. 2015)……………12

_Will Co., Ltd. v. Lee_, 47 F.4th 917 (9th Cir. 2022)…………………………………………14

_Williams v. Gaye_, 895 F.3d 1106 (9th Cir. 2018)…………………………………………...19

_Williams v. Lew_, 2016 WL 4119954 (C.D. Cal. 2016)……………………………………12

**Other Authorities**

17 U.S.C. § 101 et. seq………………………………………………………………………...20

17 U.S.C. § 408(a)…………………………………………………………………………….13

17 U.S.C. § 411(a)…………………………………………………………………………….13

17 U.S.C. § 1202(b)(1)………………………………………………………………………..20

Federal Rule of Civil Procedure 12(b)(1)………………………………………………….12, 20

Federal Rule of Civil Procedure 12(b)(2)………………………………………………….10, 11

Federal Rule of Civil Procedure 12(b)(6)…………………………………………………….11

# **PRELIMINARY STATEMENT**

A shameless, heavily manipulated interpretation of the tortured history between plaintiff MMAS RESEARCH LLC (the "Plaintiff") and moving defendants DONALD E. MORISKY ("Dr. Morisky") and MORISKY MEDICATION ADHERENCE RESEARCH LLC ("MMAR") (defendants collectively the "Moving Defendants"). That is what Moving Defendants' motion is in a nutshell.  For Moving Defendants to assert otherwise with a straight face and represent as much to this Court is to disregard a sizeable record, already annexed to the Amended Complaint for Damages (the "Amended Complaint"),[1] that is replete with offense after offense undertaken by Moving Defendants and others in complete contradiction to not just the prior preliminary settlement agreement (referred to within the Amended Complaint for Damages as the "CR2A") entered into between Plaintiff and Moving Defendants, but also Plaintiff's contractual relationship with defendant UNIVERSITY OF WOLVERHAMPTON ("Wolverhampton"). Indeed, the attempt to portray Plaintiff, or specifically its principal, Steven Trubow, as some type of thieving charlatan is to ignore Moving Defendants' unceasing disregard for the CR2A, which Moving Defendants' outside counsel itself helped draft, but also the substantial amount of time and effort that Plaintiff, by way of Mr. Trubow, put in while Moving Defendants had to do little more than act as absentee landlords for the collection of fees and settlements arising from the contractual misdeeds of others, including non-moving defendant Wolverhampton, if they were just able to curb their shady, greedy ways. Unfortunately, Moving Defendants could not stay out of their own way, however, and the instant lawsuit resulted. Accordingly, for all of the reasons discussed herein, Defendants' motion to dismiss be denied in its entirety so that Moving Defendants can be made to for account for their actions specifically as to non-moving defendant Wolverhampton, actions which are just the tip of the iceberg of their demonstrable misdeeds as against Plaintiff.

---

[1] Docket Entry ("D.E.") No. 22.

## STATEMENT OF MATERIAL FACTS

In an effort to declutter the fundamental legal arguments which follow and put the Court on explicit notice of the myriad misrepresentations upon which Moving Defendants' motion sits, this Section will not simply regurgitate the Amended Complaint, which Plaintiff incorporates in its entirety by reference herein, but rather be used to methodically dismantle virtually every major "factual" assertion made within the instant motion.

**Plaintiff's Intellectual Property Rights/Standing**

Moving Defendants repeatedly represent in their motion papers, starting in the Introduction, that Plaintiff has no articulable intellectual property interest in any permutation of the diagnostic tools the MMAS-4, the MMAS-8, or the Morisky Widget.[2] In support of their position, Moving Defendants somehow refer to the CR2A, a preliminary[3] settlement agreement written by Moving Defendants' own counsel, with material input from Plaintiff and its then-counsel. The CR2A, as it relates to Plaintiff's standing to bring this, or any lawsuit, provides as follows:

"Trubow Party shall train the Morisky Party in the use of the Morisky Widget (including, without limitation, any code book or other instructional material, if any, identifying database variables and how they are scored) so that they may operate and maintain it as currently constituted and service licensees as presently done by the Trubow Party. Each Party will agree to cooperate in good faith and keep the existing morisky.org website available and running for a transition period to commence upon the execution of this Agreement and to conclude within 60 days of the date the Final Settlement.

"The Morisky Party and MMAR agrees [sic] to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR) and HIPPA [sic]). With regard to any License

---

[2] D.E. No. 32-1 at p. 1.

[3] D.E. No. 22 at Exh. 12, p. 1 ("[Parties] have reached a **preliminary** agreement…") (emphasis added). Later it is noted that "[t]he Parties agree to cooperate and take all reasonable steps necessary to effectuate the terms of this Agreement and the Final Agreement, including without limitation, identifying and executing all documents necessary to facilitate any assignment or transfers to Donald Morisky contemplated by this Agreement **or as set forth in the Final Agreement [which, to date, has not been entered into], including without limitation, any copyrights in the Morisky Widget**…" Id. at p. 9 (emphasis added).

Agreements that are not assignable, the Trubow Party shall work in good faith to transition the servicing of such License Agreements to the Morisky Party, including without limitation, providing relevant introductions and authorizing the Morisky Party to be an authorized agent of MMAS Research, LLC for the purpose of so servicing such License Agreements through their term.

"The list of Morisky Widget licensees set forth in Exhibit 4 to this Agreement represents the minimum number of all such License Agreements. Donald Morisky agrees to assume all ongoing obligations and responsibilities under all License Agreements assigned or serviced by Donald Morisky by the completion of the Transition Period."[4]

Further,

"MMAS Research, LLC and/or Steven Trubow will receive fifty-five percent (55%) and Donald Morisky will receive forty-five percent (45%) (respectively, each Party's "Proceeds Percentage") of the "Net Proceeds" (as defined herein) generated from any "Claim Settlements" (as defined herein). All proceeds of any Claim Settlement payment received from a third-party ("Gross Proceeds") shall be deposited into an attorney client trust account for the benefit of the Parties. The net of such proceeds remaining after the payment of the attorney fees and recoverable costs incurred by the attorney(s) prosecuting any Claim Settlement ("Net Proceeds"), shall be disbursed from the attorney client trust account to the Parties in accordance with their respective Proceed Percentage along with a financial accounting of the same within thirty (30) days of the attorney's receipt of such Gross Proceeds. The expenses of each Party incurred in connection with a Claim Settlement shall be exclusively born by that Party and shall not be deducted from the attorney client trust account, the Gross Proceeds, or the Net Proceeds prior to disbursement to the Parties.

"As used herein, the term "Claim Settlements" refers to any settlement agreement entered by MMAS Research and/or Donald Morisky on the one hand and a third-party on the other hand alleged to have infringed the Morisky IP (as defined herein) and/or the MMAS IP, breached a contract or to be liable for any other claim related to or arising from use of the Morisky IP, MMAS IP, or a license agreement for use of the Morisky IP and/or the MMAS IP after January 1, 2017, until the date on which this Agreement is signed by the Parties. The Claim Settlements at issue herein include any Claim Settlement agreements previously signed by Donald Morisky, now pending or existing investigations to be negotiated, finalized, or

---

[4] D.E. No. 22 at. Exh. 12.

executed in a final Claim Settlement at any time in the future, which concern refer or relate to the Morisky IP or the MMAS IP. The Claim Settlement *may include a retroactive license for the Morisky Widget and may include corrective measures to be performed by the licensee with the assistance of Steve Trubow, and training and certification to be done by Donald Morisky or Steve Trubow, at the option of Donald Morisky. Fees for training and certification shall be paid to the party training and certifying by the party receiving the training and certification. The "Claim Settlements" are limited to those set forth and listed in Exhibit 3, attached to this Agreement, as of the date on which this Agreement is signed by the Parties.

"Donald Morisky authorizes MMAS Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget, and any related intellectual property, and further agrees to cooperate in any existing investigations, claims and ensuing litigation of any such claims, whether now pending or to be litigated in the future, including the formal assignment of such claims, if necessary to MMAS Research, LLC. With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS Research, LLC through its attorney(s) must conclude within two (2) years of the expiration of the Transition Period as described in Paragraph 7 of this Agreement. Any legal actions, including claims for infringement, may be filed in the name of Donald Morisky if required by law, as the owner(s) of the Morisky IP."[5]

The CR2A was signed by all of its parties on or about December 4, 2020.[6] And in the absence of a subsequent final settlement agreement, it is essential for the Court to note that, by its very terms, there was thus never a transfer of the Morisky Widget copyright or any license for the same over to Moving Defendants. It accordingly remains with Plaintiff as, the United States District Court for the Western District of Washington, the only other court to interpret the impact of the CR2A found that, as of April 15, 2022, Plaintiff[7] "holds the Copyright Registration to the Morisky Widget[.]"[8]  Further, the Western District of Washington acknowledged that "the Morisky Widget is exclusively in [Plaintiff's] control

---

[5] Id.
[6] Id. at pp. 10-15.
[7] The decision itself refers to "Defendants," as Plaintiff and several individuals associated with Plaintiff as named as defendants. As they all lumped together for the decision, it is simply converted to "Plaintiff" in brackets here.
[8] See April 29, 2022 Report and Recommendation of United States Magistrate Judge David W. Christel in Morisky v. MMAS Research LLC (Index No. 21-cv-1301-RSM-DWC, United States District Court for the Western District of Washington), annexed hereto as Exhibit A, at p. 6, line 22.

4

[.]"[9]   The Western District of Washington then expressed its hope that defendant Dr. Morisky would cooperate with the same.[10]   It further recognized that the CR2A "authorizes [Plaintiff] to pursue retroactive licensing agreements for the Morisky Widget, and that [the Moriskys'] motion for an order enjoining [Plaintiff] from 'using and selling the Morisky IP' including the 'Morisky Widget'—the copyright registration for which is in [Plaintiff's] name—would halt the process."[11]   Indeed, this is because Plaintiff's obligation under the CR2A, as noted by the Western District of Washington, was to "pursue Settlement Claims with known infringers of the Morisky Widget" which "is not yet complete" and thus Plaintiff had to retain the "Registered Copyright to the Morisky Widget because Copyright law prohibits assigning enforcement rights to a third party." [12]

The Western District of Washington further found that, as of the date of its ruling, defendant Dr. Morisky had "not shown evidence that [Plaintiff is] actually infringing [defendant Dr. Morisky's] registered copyrights [,]" as Plaintiff averred "that [it] only use[s] the Morisky Widget and associated Morisky IP to facilitate Claim Settlements [as in this matter as to non-moving defendant Wolverhampton] with the parties listed in Exhibit 3 of the [CR2A] and to establish a mental-health specific survey that [defendant Dr. Morisky's] counsel signed off on as non-infringing."[13]   Moreover, the Western District of Washington opined that "even assuming for the sake of argument that [Plaintiff is] selling licenses to the Morisky Widget in contravention of the [CR2A], [defendant Dr. Morisky] still could not provide Copyright Infringement because as provided under the [CR2A] he does not hold the Copyright Registration to the Morisky Widget.   In other words, even if [defendant Dr. Morisky] proves to be correct on his claim, it bears no causal connection to [defendant Dr. Morisky's] alleged loss of control over his copyrights to the MMAS-4 or the MMAS-8, or trademark of 'MMAS.'"[14]   Finally, as pertinent to the instant

---

[9] Id. at p. 8, line 16.
[10] Id.
[11] Id. at p. 9; see also Exhibit B, the April 15, 2022 "Order Adopting Report and Recommendation" filed by United States District Judge Ricardo S. Martinez of the Western District of Washington, annexed hereto.
[12] Id. at pp. 7-8.
[13] Id. at p. 7.
[14] Id. at p. 8.

1    motion, the Western District of Washington found that "[t]he fact that the Morisky Widget

2    is exclusively in [Plaintiff's] control is a particularly salient point here because the purpose

3    of a preliminary injunction [as was being litigated] is to preserve the status quo until the

4    case can be heard on the merits…Here the last uncontested status preceding [the Western

5    District of Washington] case is clearly spelled out by the [CR2A]."[15] And that remains the

6    case as of the date of this submission.

7       Despite the explicit non-final nature of the CR2A, the meticulous ruling of the

8    Western District of Washington (which predates the instant motion and the Amended

9    Complaint)[16] and, perhaps crucially, the copyright registration for the Morisky Widget,

10    which is in the name of Plaintiff,[17] Moving Defendants nonetheless have frivolously

11    depicted Plaintiff as not having any intellectual property interest in the Morisky Widget.

12    Moreover, Moving Defendants prey on the Court's lack of in-depth knowledge as to the

13    Morisky Widget by casting the Morisky Widget as nothing more than the digitized version

14    of defendant Dr. Morisky's MMAS-4 and MMAS-8 questions. This too is a readily

15    revealed falsehood. Plaintiff's Morisky Widget, which is Morisky in name only at present,

16    contains several other widely used medical adherence tests, specifically "CUDOS,

17    CUXOS, the National Institute of Drug Abuse Modified Assist Screen ('NIDA-Modified

18    ASSIST'), and the Columbia-Suicide Severity Rating Scale ('C-SSRS')."[18]  Each of the

19    aforementioned assessments are included in the registered source code of the Morisky

20    Widget which, again, belongs to Plaintiff.[19]  Moving Defendants' utterly compromised,

21    readily undermined, and materially misleading account of the status of Plaintiff's

22    intellectual property rights within their "Introduction" should accordingly be given no

---

[15] Id.

[16] It is notable that Moving Defendants do not even acknowledge the existence of the excerpted ruling in its own papers despite its rather detailed insight on an issue that looms heavily over the instant matter. This, in and of itself, should be telling as to the credibility of Moving Defendants' motion as a whole.

[17] Exhibit C.

[18] D.E. No. 22 at ¶ 23.

[19] Id. at ¶ 24; see also Id. at ¶¶ 26-31 (further fleshing out the contours of Plaintiff's copyright).

consideration by the Court in its contemplation of the instant motion.[20]  Plaintiff's standing is as plain as day and subject matter jurisdiction, as will be discussed below, is as well.

### Facts as to Personal Jurisdiction

Moving Defendants bizarrely acknowledge, yet wholly downplay, what significance defendant Dr. Morisky's "property" in the State of California can serve as the basis of personal jurisdiction for both himself and defendant MMAR.[21]  The "property" is another residential property owned by defendant Dr. Morisky.[22]  Only defendant Dr. Morisky's *ipse dixit* as to where he spends his time is what places him in Nevada for any appreciable period of any given year.  For all that Plaintiff or Court knows at this point, defendant Dr. Morisky may very well split time between Nevada and California, where he is still employed by UCLA.[23]  It is simply legal fallacy for Moving Defendants to suggest that an individual who has property and/or residences in multiple states can only be properly sued in one of them.

With regard to personal jurisdiction over defendant MMAR, despite its principal place of business of Nevada, its rather active CEO, defendant Philip Morisky (who is not a party to this motion), was just served in this case on or about November 11, 2022 at his address in Long Beach, California, after six (6) prior attempts including one where, subject to further inquiry, non-moving defendant Philip Morisky himself may have misled a process server as to his identity.[24]  Defendant Philip Morisky has, in writing, unabashedly acted as an officer of defendant MMAR as part of his family's ceaseless attack on Plaintiff's contractual and intellectual property rights.[25]

In sum, Moving Defendants' assertions as to personal jurisdiction, as will be fleshed out more below, have no basis in reality and should not be considered by the Court in its consideration of their motion.

---

[20] D.E. No. 31-1 at pp. 1-2.
[21] Id. at p. 2.
[22] Exhibit D.
[23] D.E. No. 22 at ¶ 5.
[24] Exhibit E.
[25] See, e.g., Exhibit F.

**Facts as to MMAS Research LLC v. The Charite[26]**

Moving Defendants' falsely characterize how definitive the decision of the court was in the above-referenced matter. Despite granting a motion to dismiss on behalf of the defendant, it was granted with leave to re-plead, and Plaintiff now has to until December 5, 2022 to file an amended complaint in the same.[27]  While the court in the above-referenced matter may not have found standing based upon what was previously alleged in that complaint, the amended complaint will contain factual allegations of the nature summarized above (and already summarized in the Amended Complaint and its exhibits), and more, including as to that defendant's offenses on U.S. soil, in order to leave no doubt next time.

**Specific Factual Allegations as to Moving Defendants' Infringing Activity**

Moving Defendants, despite spending a little over six (6) pages of their Memorandum itemizing the specific factual allegations against them, somehow then claim that the Amended Complaint fails to allege specific facts as to their copyright claims and other claims.[28] As to Moving Defendants, their own Memorandum itemizes, <u>inter</u> <u>alia</u>, that:

- Moving Defendants engaged in activity that is actionable under U.S. Copyright wherein it is stated "[t]he Fraudulent Acknowledgement intentionally misrepresents facts, including but not limited to, the fact that it was the Morisky Widget, not the MMAS-8, that was used in the Study and that Plaintiff, not Donald Morisky or MMAR, is in control of granting permissions.  Defendants Donald Morisky and MMAR were not involved in the Study [;]"[29]

- "Plaintiff is informed and believes and thereon alleges that Defendants [meaning all of them], without authorization, have infringed and will continue to infringe the Morisky Widget Copyright by using, copying, counterfeiting, distributing,

---

[26] Docket No. 21-cv-01406 (United States District Court for the Central District of California (Western Division-Los Angeles)).
[27] Exhibit G.
[28] D.E. No. 32-1 at pp. 3-9, 13-17.
[29] <u>Id</u>. at p. 5.

or otherwise exploiting the same outside of the confines of the Agreement or any other valid agreement [;]"[30]

- Moving Defendants engaged in conduct which aided and abetted intellectual property infringements by non-moving defendant Wolverhampton by "directing it to replace [Plaintiff's] Morisky Widget Copyright notice with Donald Morisky's copyright notice on the Second Study Posting [;]"[31]

- Moving Defendants engaged in conduct which interfered with Plaintiff's enjoyment of its intellectual property rights with its October 30, 2021 website posting and subsequent email correspondence with non-moving defendant Wolverhampton and others, each of which are alleged, by their own terms, to have been signed by defendant Donald Morisky on behalf of MMAR and its "CEO," non-moving defendant Philip Morisky.[32]

These excerpts are just a few that Moving Defendants include in their moving papers to defeat their own points on the specificity of the allegations as to Moving Defendants.  Indeed, between these excerpted allegations, the others listed in Moving Defendants' own papers, and those that can be readily gleaned from the myriad exhibits included with the Amended Complaint, which it appears Moving Defendants do not assume the Court would look at for whatever reason, it is simply disingenuous for Moving Defendants to purport the Amended Complaint lacks the requisite specificity as to the copyright claims, or any others.

**Facts as to the First to File Assertion**

The Second Amended Complaint and Defendants' [including Plaintiff's] Second Amended Answer to Second Amended Complaint, Second Amended Affirmative Defenses, and Second Amended Counterclaims from the Western District of Washington lawsuit are annexed hereto.[33]  While a few of the parties within are the same, what is

---

[30] Id.
[31] Id.
[32] Id. at pp. 6-7.
[33] Exhibits H, I.

conspicuously absent, in word or in spirit, from either of the annexed documents is any references therein to Moving Defendants' tortious and infringing actions as to Plaintiff's dealings with non-moving defendant Wolverhampton, or any references to non-moving defendant Wolverhampton at all.   The answer as to why is plain; non-moving defendant Wolverhampton, a necessary party to this action as a result of its infringing activities alongside Moving Defendants, could not be sued in Washington, as its licensing agreement with Plaintiff, as detailed in the Amended Complaint, calls for all litigation to be brought in Los Angeles.[34]   Moving Defendants are alleged to have taken active steps to interfere in Plaintiff's relationship with non-moving defendant Wolverhampton and to infringe Plaintiff's intellectual property rights with them within the Amended Complaint. Nonetheless, Moving Defendants now ask the Court to reward them for filing a lawsuit somewhere else about different issues by either dismissing or staying this action despite the distinctively unique allegations as to their misdeeds involving non-moving defendant Wolverhampton in the instant matter.[35]   For the reasons discussed further below, Moving Defendants' wholly disingenuous request should be given no consideration by the Court in its contemplation of their motion.

## STANDARDS OF REVIEW

### For Federal Rule of Civil Procedure 12(b)(2) Motions

As synthesized in Pinnacle Fitness and Recreation Management LLC v. Jerry and Vickie Moyes Family Trust:[36]

"Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a claim for lack of personal jurisdiction over the person. When a "defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.2004). When a district court rules on a

---

[34] D.E. No. 22 at ¶¶ 4, 56; see also Id. at Exh. 14.

[35] Should the Court wish to oblige and stay the case, Plaintiff would welcome the opportunity to litigate Western District of Washington matter first, given the above-recapped findings as to the enforceability of the CR2A and Plaintiff's continuing rights as to the Morisky Widget.

[36] 2010 WL 514686, *2 (S.D. Cal. December 13, 2010)

10

defendant's motion to dismiss based on only pleadings, the plaintiff only needs to make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. <u>Data Disc., Inc. v. Sys. Technology Assoc., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir.1997); <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir.1995). In other words, the plaintiff only needs to demonstrate facts that, if true, would support jurisdiction over the defendant. <u>Ballard</u>, 65 F.3d at 1498. However, the allegations must not be conclusory, but must allege specific acts connecting the defendant with the forum. <u>Greenspun v. Del E. Webb Corp.</u>, 634 F.2d 1204, 1208 n. 5 (9th Cir.1980)."

"When ruling on a motion to dismiss pursuant to Rule 12(b)(2), the [c]ourt may consider extrinsic evidence [.]"[37]

### For Federal Rule of Civil Procedure 12(b)(6) Motions

To survive a motion to dismiss that is made pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[38] "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[39] "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action.'"[40] If a court opts to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he Ninth Circuit has 'repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it

---

[37] <u>Oakley, Inc. v. Trimera Military Technology, Inc.</u>, 2016 WL 8794459, *5 (C.D. Cal. January 22, 2016) (<u>citing</u> <u>Stewart v. Screen Gems-EMI Music, Inc.</u>, 81 F. Supp. 938, 951 (N.D. Cal. 2015) (<u>citing</u> <u>Doe v. Unocal Corp.</u>, 248 F.3d 914, 922 (9th Cir. 2001)).
[38] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted).
[39] <u>Roettegen v. Paramo</u>, 2022 WL 3109576, *1 (S.D. Cal. August 4, 2022) (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678 (internal quotation omitted)).
[40] <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)).

determines that the pleading could not possibly be cured by the allegations of other facts.'"[41]

### For Federal Rule of Civil Procedure 12(b)(1)/Standing Motions

In opposition to a motion made pursuant to Federal Rule of Civil Procedure 12(b)(1), "[t]he party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over its claims."[42]  "In determining the existence of subject matter jurisdiction, a court may review evidence beyond the complaint without converting a motion into one for summary judgment."[43]  "The plaintiff bears the burden of establishing subject matter jurisdiction."[44]

It is established that "[a] court considering a motion to dismiss for lack of subject matter jurisdiction is not restricted to the face of the complaint and may review any evidence to resolve disputes concerning the existence of jurisdiction."[45]  "When considering a motion to dismiss for lack of standing, the Court must construe factual allegations in favor of the plaintiff."[46]  Likewise, "[w]hen a motion to dismiss attacks subject matter jurisdiction on the face of the complaint…the court assumes the factual

---

[41] Silverman v. Lane, 2019 WL 4040111, *2 (N.D. Cal. August 27, 2019) (quoting Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)).

[42] Monier v. United States, 2017 WL 5569872, *1 (S.D. Cal. November 20, 2017) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L.2d 391 (1994)).

[43] Williams v. Lew, 2016 WL 4119954, *1 (C.D. Cal. 2016) (citing Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1544, n.1 (9th Cir. 1994)).

[44] Id. (citing Thornhill Pub. Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)).

[45] Brooks v. Lovisa America, LLC, 2022 WL 4387979, *1 (E.D. Cal. September 22, 2022) (citing McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) (additional citations omitted)).

[46] Oliver v. The Men's Wearhouse, 2017 WL 2664988, *1 (C.D. Cal. 2017) (citing WildEarth Guardians v. U.S. Dep't of Agric., 795 F.3d 1148, 1154 (9th Cir. 2015)).

allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor."[47]

## **ARGUMENT**

### I.   **PLAINTIFF HAS STANDING TO BRING THE COPYRIGHT INFRINGEMENT CLAIMS, AS MOVING DEFENDANTS' ARGUMENTS ARE BASED ON A MISLEADING RECITATION OF THE COMPONENTS OF AND RIGHTS TO AND IN THE MORISKY WIDGET**

It is recognized that "to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'"[48] Further, "[b]efore suing, the owner of a copyright or of any exclusive right in the work must register the copyright."[49]

As meticulously detailed above in the "Plaintiff's Intellectual Property Rights/Standing" section of the Material Facts, the Court should find it to be unquestionable that Plaintiff is, in fact, "the legal or beneficial owner of an exclusive right under a copyright" in the Morisky Widget.[50]  It should further be plain to the Court from the above synopsis that Plaintiff, which owns a copyright in the Morisky Widget in the absence of any of the assignment of the same in any final settlement agreement arising from the CR2A (again, a preliminary agreement by its very wording), has also unquestionably registered the copyright based on the extrinsic evidence provided to

---

[47] Lunn v. City of Los Angeles, 2022 WL 4357436, *2 (C.D. Cal. September 20, 2022) (citing Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009)).
[48] Silvers v. Sony Entertainment Pictures, Inc., 402 F.3d 881, 884 (9th Cir. 2005) (internal citation omitted).
[49] Crafty Productions, Inc. v. Fuqing Sanxing Crafts Co. Ltd., 839 Fed. Appx. 95, 97 (9th Cir. 2020) (citing 17 U.S.C. §§ 408(a), 411(a)).
[50] Silvers, 402 F.3d at 884.

document the same.[51]  Based on the foregoing, it is respectfully requested that the Court wholly disregard Moving Defendant's wholly misleading alleged facts and find that Plaintiff has carried its burden of proof and has standing to bring its copyright infringement claims against Moving Defendants and others.  The instant motion should accordingly be denied in its entirety.

## II.   PLAINTIFF CAN READILY ALLEGE AND DEMONSTRATE PERSONAL JURISDICTION OVER MOVING DEFENDANTS, WHO HAVE MISCONSTRUED MATERIAL INFORMATION ON THEIR DOMICILES AND/OR HAVE COMMITTED INTENTIONAL TORTS CALCULATED TO CAUSE INJURY IN THIS DISTRICT

For claims arising under the Copyright Act, "a defendant has the requisite minimum contacts with the forum if: (1) the defendant 'purposefully direct[s]' its activities at the forum, (2) the lawsuit 'arises out of or relates to the defendant's forum-related activities', and (3) the exercise of jurisdiction is 'reasonable.'"[52]   "Where…a defendant allegedly committed intentional torts outside the forum that are calculated to cause injury to the plaintiff in the forum, '[w]e evaluate purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in Calder v. Jones, [465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)].' Schwarzenegger, 374 F.3d at 803. 'Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

---

[51] Crafty Productions, Inc., 839 Fed. Appx. at 97; Oakley, Inc., 2016 WL 8794459, at *5.

[52] Will Co., Ltd. v. Lee, 47 F.4th 917 (9th Cir. 2022) (citing Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227–28 (9th Cir. 2011)).

14

harm that the defendant knows is likely to be suffered in the forum state.'' <u>Picot</u>, 780

F.3d at 1214 (citation omitted)."[53]

### i.   Moving Defendants Purposefully Directed Their Activities at This District

Moving Defendants are alleged to be aware of the subject licensing agreement

between Plaintiff and non-moving defendant Wolverhampton.[54] That agreement provides

that all legal action arising from that licensing agreement is to be litigated in Los Angeles,

as detailed above.  Moving Defendants are further alleged within the four corners of the

Amended Complaint to have infringed upon Plaintiff's copyright in the Morisky Widget

in its actions in concert with non-moving defendant Wolverhampton. And as an incidental

side effect of Plaintiff's extrinsic evidence as to standing, the Court is now aware that non-

moving defendant Philip Morisky, the CEO of defendant MMAR, resides in California

despite moving defendant MMAR's perhaps nominal Nevada locale and that defendant

Dr. Morisky has a residence in California as well where it can be presumed he too directed

activities at Plaintiff at this stage of the litigation. Given Moving Defendants' knowledge

and activities, it simply cannot be said that they did not purposefully direct their activities

towards the district in which this particular Court is located.[55]

---

[53] <u>Janus v. Freeman</u>, 840 Fed. Appx. 928, 930 (9th Cir. 2020) (<u>citing</u> <u>Schwarzenegger</u>, 374 F.3d at 803 (9th Cir. 2004); <u>Picot v. Weston</u>, 780 F.3d 1206, 1214 (9th Cir. 2015)).
[54] D.E. No. 22 at ¶ 112.
[55] <u>Will Co., Ltd.</u>, 47 F.4th at 917.

### ii.     Plaintiff's Lawsuit Arises Out of Moving Defendants' Forum-Related Activities

At this point in time, it is only Moving Defendants' *ipse dixit* which supports any claim that none of the subject actions took place in California because of their Nevada locale. Given defendant Dr. Morisky's residential address in California, and non-moving defendant Philip Morisky's recently confirmed residence in California, the Court can conclusively, or at least preliminarily, find that this lawsuit arises out of Moving Defendants' activities in this District,[56] subject to any discovery peculiarly in their possession which would bolster their bald assertions on personal jurisdiction.[57]

### iii.    Based on the Known Residences of Moving Defendants and/or Their Officers, the Exercise of Jurisdiction is Reasonable

For the reasons discussed in the Material Facts section, as well as in subsections (i) and (ii) above, it is respectfully requested that the exercise of jurisdiction over Moving Defendants in this District is reasonable.[58]

### iv.    Alternatively, if the Court is Not Convinced That Moving Defendants Have Done Enough In-State, it Should Find That Their Purposeful Acts in Nevada Had Effects in California

In the event that Court is not satisfied that acts against Plaintiff were, in fact, conducted in California despite the factual allegations and extrinsic evidence, it could

---

[56] Id.

[57] See, e.g., Greenpeace, Inc. v. The State of France, 946 F. Supp. 773, 789 (C.D. Cal. 1996) (quoting Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986)) (holding that further discovery may appropriate where facts as to jurisdiction "'are peculiarly within the knowledge of the opposing party'"). Here, it simply cannot be expected for Plaintiff to know whether defendant Dr. Morisky or non-moving defendant Philip Morisky conducted business as to defendant MMAR, by way of their phones or emails, in California or Nevada, on its own at this stage, or whether the Nevada address is anything more than an address while moving defendant Dr. Morisky and non-moving defendant Philip Morisky conduct its business from California.

[58] Will Co., Ltd., 47 F.4th at 917.

16

nonetheless find personal jurisdiction appropriate.  This is because, as alleged in the Amended Complaint and recapped in the Material Facts (and Moving Defendants' own papers), Moving Defendants stand accused of committing multiple intentional acts against Moving Defendant, including by way of directing the infringing acknowledgement on non-moving defendant Wolverhampton's study and expressly aimed this act and others at the State of California which, it should be noted, <u>was reflected as the Petaluma, California address in the appropriate acknowledgment</u> that they are alleged to have taken active steps to compel the replacement of in correspondence with non-moving defendant Wolverhampton.[59]  Accordingly, Moving Defendants had to know that Plaintiff's harm was likely to be suffered in the State of California.[60]

Based on the foregoing, whether the Court finds personal jurisdiction as to the Moving Defendants to be appropriate in Nevada, or California, it should nonetheless find personal jurisdiction and dismiss Moving Defendants' motion in its entirety.

### III.    AS PERSONAL JURISDICTION CAN BE DEMONSTRATED, SO TOO CAN VENUE FOR COPYRIGHT INFRINGEMENT

Venue is appropriate "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state."[61]  "Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either

---

[59] Exhibit J.
[60] <u>Janus</u>, 840 Fed. Appx. at 930.
[61] <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation omitted).

dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought." [62]

For all of the reasons detailed at length in Section II, above, it is respectfully requested that the Court should find that it has personal jurisdiction over Moving Defendants.  Assuming the Court agrees, it necessarily follows that venue is appropriate in this matter, as under either scenario indicated in Section II, above, Moving Defendants "would be amendable to personal jurisdiction" if the Central District of California "were a separate state" based upon their activities.[63]   Alternately, if the Court, for any reason, finds that venue is improper, it is respectfully requested that venue be transferred either to an appropriate district court in Nevada or, as suggested by Moving Defendants in their own moving papers, to the Western District of Washington where, once again, Plaintiff has already received a favorable ruling as the viability of the CR2A and as to its intellectual property rights in the Morisky Widget.[64]

---

[62] <u>Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.</u>, 191 F. Supp.3d 1007, 1020-21 (N.D. Cal. 2016).
[63] <u>Brayton Purcell LLP</u>, 606 F.3d at 1128.
[64] <u>D.E.</u> No. 32-1 at pp. 21-23; <u>Exh.</u> A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   THE FOUR CORNERS OF THE AMENDED COMPLAINT, AND THE EXTRINSIC EVIDENCE PRESENTED HEREIN, EXPRESSLY ALLEGE SPECIFIC FACTS SUFFICIENT TO STATE A CLAIM FOR <u>RELIEF ON THE COPYRIGHT CLAIMS</u>

### i.   Plaintiff Provides Sufficient Notice to Each Moving Defendant as to the Allegations Raised Within the Four Corners of the Amended Complaint and the Exhibits Annexed Thereto

"To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work."[65]

As documented in the "Material Facts" section, above, Plaintiff has a registered copyright in the Morisky Widget, a fact expressly reiterated in the ruling  by the Western District of Washington.[66]  Plaintiff then specifically alleges that Defendants, including Moving Defendants, "have infringed and will continue to infringe the Morisky Widget Copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same outside of the confines of the Agreement or any other valid agreement."[67]  It is further alleged, based upon the four corners of the Complaint and all of the exhibits annexed thereto, that Defendants,' including Moving Defendants,' "infringement of the Morisky Widget Copyright was intentional, knowing, willful, and malicious."[68]  These catchall allegations, when viewed in the context of the entirety of the Amended

---

[65] <u>Williams v. Gaye</u>, 895 F.3d 1106, 1119 (9th Cir. 2018) (<u>citing</u> <u>Swirsky v. Carey</u>, 376 F.3d 841, 844 (9th Cir. 2004)).
[66] <u>Williams</u>, 895 F.3d at 1119.
[67] D.E. No. 32-1 at p.5.
[68] <u>Id</u>.

19

Complaint and its several hundred pages of exhibits, provide sufficient notice to Moving Defendants as to the copyright claims in this matter.

### ii. Plaintiff Alleges Sufficient Facts Demonstrating Copyright Infringement as to Moving Defendants, Including Misattribution, Which Falls Under U.S. Copyright Laws, as Well as Contract Law

While it is true that "the right to attribution is not a protected right under the Copyright Act []"[69] itself, under 17 U.S.C. § 1202(b)(1), "'[n]o person shall, without the authority of the copyright owner or the law ... intentionally remove or alter any copyright management information ... knowing, or ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any' copyright."[70] 17 U.S.C. § 1202(b)(1) requires "the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions 'will induce, enable, facilitate, or conceal' infringement."[71]

Plaintiff expressly asserts within the Second Cause of Action that it has "complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., and all other laws governing copyright."[72]  In doing so Plaintiff successfully referred to additional copyright provisions not expressly invoked by name or section, including 17 U.S.C. § 1202(b)(1). It has relatedly been alleged that Defendants, including Moving Defendants, intentionally removed or otherwise altered the acknowledgment, the copyright management information for one of the subject studies, despite "knowing, or…having reasonable grounds to know, that it" would "induce, enable, facilitate, or conceal an infringement" of Plaintiff's copyright in the Morisky Widget.[73] Moreover, the circumstances alleged within the four corners of the Complaint and its annexed exhibits, as well as in extrinsic evidence presented as to moving defendant MMAR's CEO, as summarized in the "Material Facts"

---

[69] UMG Recordings, Inc. v. Disco Azteca Distributors, Inc., 446 F. Supp.2d 1164, 1178 (E.D. Cal. 2006) (internal citations omitted).
[70] Stevens v. Corelogic, Inc., 899 F.3d 666, 673 (9th Cir. 2018).
[71] Id.; see also, e.g., SellPoolSuppliesOnline.com v. Ugly Pools Arizona, Inc., 804 Fed. Appx. 668 (9th Cir. 2020); Imagineline, Inc. v. Cafepress.com, Inc., 2011 WL1322525 (C.D. Cal. April 6, 2011).
[72] D.E. No. 22 at ¶ 98 (emphasis added).
[73] 17 U.S.C. § 1202(b)(1).

20

above, unquestionably reflect that Moving Defendants possessed "the mental state of knowing…that [their] actions" would unquestionably "induce, enable, facilitate, or conceal" infringement, including that which Moving Defendants and  non-moving defendant Wolverhampton stand accused of in the Amended Complaint.[74]

Based on the foregoing, it is respectfully submitted that Plaintiff has expressly allegedly sufficiently specific facts to state facially sufficient copyright claims against Moving Defendants.  The instant motion should accordingly be denied in its entirety as to the copyright claims.

## V.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

For all of the reasons discussed at length in Sections I through IV, above, it is respectfully submitted that since Plaintiff has established standing, personal jurisdiction, venue, and facts sufficient to state a claim for copyright infringement as to Moving Defendants, the portion of Moving Defendants' motion to dismiss as to the federal claims should be denied in its entirety and that the Court should accordingly assert pendent jurisdiction over the state law claims.

## VI.   PLAINTIFF APPROPRIATELY ALLEGED TORTIOUS INTERFERENCE WITH CONTRACT AND UNFAIR BUSINESS PRACTICES SINCE MOVING DEFENDANTS' PURPORTED PROTECTIONS ARE INVALID AS A RESULT OF SHAM CLAIMS

A "sham exception" to the *Noerr-Pennington* doctrine exists where, as here, the subject conduct involved using 'governmental process…as an anticompetitive weapon.'"[75] "The Ninth Circuit has held that a defendant's activities may fall into this exception if they include making intentional misrepresentations to the court that then 'deprive [] the litigation of its legitimacy.'"[76]

---

[74] Id.

[75] Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643 (9th Cir. 2009) (quoting Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1060 (9th Cir. 1998).

[76] Id.

As was demonstrated at length in the "Material Facts" section above, it is apparent that Moving Defendants have filed the instant motion as nothing more than an "anticompetitive weapon" against Plaintiff.[77]  Central to such a finding is non-moving defendant Philip Morisky, the CEO of moving defendant MMAR who, at this stage of the litigation, there is ample initial evidence to support was at the front line of trying put Plaintiff out of business by his actions. As alleged in the Amended Complaint itself, and noted in Moving Defendants' own papers, moving defendant MMAR's CEO was the apparent beneficiary of a bogus GMRF report, a report generated by Plaintiff's own product and a clear competitor for MMAR's products going forward.[78]  At the same time, the extrinsic evidence submitted herewith to support standing and subject matter jurisdiction as to Moving Defendants has moving defendant MMAR's CEO on the front line of repeated written, flagrant interference in Plaintiff's contractual and/or intellectual property rights.[79]  Based on the foregoing, the Court can readily find the instant motion is nothing more than a sham and that until this motion is decided against them, deprives this matter of its legitimacy, and reject Moving Defendants' argument as to *Noerr-Pennington* applicability accordingly.[80]

At the same time, Plaintiff respectfully concedes that California's litigation privilege does not appear to reach the state claims against Moving Defendants. Nonetheless, the claims for tortious interference and unfair competition should be preserved anyway pursuant to the "sham exception" to the *Noerr-Pennington* doctrine, as well as pursuant to the Erie doctrine and its pertinent progeny, which dictates that the *Noerr-Pennington* doctrine should control.[81]

---

[77] Kearney, 590 F.3d at 643.
[78] D.E. No. 32-1 at p. 5.
[79] Exhibit F.
[80] Kearney, 590 F.3d at 643.
[81] See, e.g., O'Campo v. Chico Mall, LP, 758 F. Supp.2d 976, 985 (E.D. Cal. 2010) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).) (noting that "[w]hen federal courts consider claims under state law, they are to apply federal procedural law and state substantive law" pursuant to Erie and further that "the court must determine whether application of the state law is likely to be determinative of the outcome of the lawsuit").

1
2

## VII.   THE FIRST TO FILE DOCTRINE IS INAPPLICABLE HERE, AS THE TWO CASES DEAL WITH DEMONSTRABLY DIFFERENT ISSUES

3
4
5

There are "[t]hree threshold factors should be considered in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."[82]

6
7
8

### i.   The Western District of Washington Lawsuit and the Instant Matter Were Filed Within a Year of Each Other, Yet Are Largely at the Same Stage

9
10
11
12
13
14
15
16
17

Moving defendant Dr. Morisky, <u>individually</u>, filed the initial lawsuit against Plaintiff, along with six (6) other defendants filed the Western District of Washington complaint that Moving Defendants are now clinging to as part of their "first to file" argument on September 24, 2021.[83]   Moving defendant Dr. Morisky just answered the Second Amended Counterclaims in that matter earlier this month.[84]   Correspondingly, while the instant matter was filed on July 25, 2022, this matter is no further along in discovery as a result of the instant motion.[85]   It is accordingly a toss-up at this juncture which, if either, should be given the go-ahead to reach its completion first.

18
19

### ii.   Moving Defendant MMAR is Not a Party in the Western District of Washington Matter

20
21
22
23
24

Even though it is Moving Defendants collectively moving to dismiss this matter pursuant to the "first-to-file rule [,]" it is worth noting that moving defendant MMAR is not even a party in that matter.[86]   Likewise, there are several defendants named in the Western District of Washington matter who are not plaintiffs in this matter.[87]   Moving defendant Dr. Morisky, for reasons not apparent if he is now maintaining that the issues

25
26
27
28

---

[82] Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 270 (C.D. Cal. 1998) (citing Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625–26 (9th Cir. 1991) (additional citation omitted).
[83] Exhibit K at D.E. No. 1.
[84] Id. at D.E. No. 95.
[85] Exhibit L.
[86] Exhibit K.
[87] Id.

23

in both matters are substantially similar, did not include his company, moving defendant MMAR in that matter, yet now wishes to reap the benefits of the timing of the Western District of Washington case now.

### iii. While Certain Issues May Be Similar, There Are Distinctly Different Issues in the Instant Matter as Pertaining to Non-Moving Defendant Wolverhampton

Moving Defendants misleadingly purport that should Plaintiff ultimately be unsuccessful in the Western District of Washington matter, that all of its causes of action would necessarily fall apart in the instant matter.[88] This argument wholly ignores that at least some of the claims against Moving Defendants, as well as non-moving defendant Wolverhampton and others, arise from contract-based claims, the validity of which at the time of the alleged breaches and/or interferences that are valid and would remain so pursuant to the CR2A. In any event, as documented in the Material Facts section above, it should not be presumed that moving defendant Dr. Morisky will even succeed in the Western District of Washington matter at this time as, once again, the Morisky Widget, for which Plaintiff has the copyright according to that court, consists of several additional medication adherence components, and not just the MMAS-4 and MMAS-8. If thought of through that paradigm, any dismissal or stay pursuant to the first-to-file rule would do little more than reward Moving Defendants for trying to hoodwink the Court about the realities of the Morisky Widget. The instant motion should accordingly be denied in its entirety.

### VIII. ANY DISMISSAL OF THE AMENDED COMPLAINT SHOULD BE WITHOUT PREJUDICE AS AMENDMENT WOULD NOT BE FUTILE

For all of the reasons discussed at length throughout this Memorandum, and particularly in Sections I, II, and III, it is respectfully submitted that in the event that the

---

[88] D.E. No. 32-1, at p. 23.

Court opts to find that the Amended Complaint should be dismissed, that it should be dismissed without prejudice, as Plaintiff has revealed the existence of various avenues for which claims sustained in the Central District of California can be sustained going forward.  As an initial matter, however, this matter should not be dismissed in the first instance as to Moving Defendants. Again, standing/ subject matter jurisdiction should be above reproach for all of the reasons discussed at length in the "Material Facts" section and Moving Defendants' curious number of residences in the State of California for an individual and entity which purport to be exclusively in Nevada should cut against a finding of no personal jurisdiction.  If the evidence as to standing, subject matter jurisdiction, and personal jurisdiction is not quite found to reach far enough in the Amended Complaint, however, the Court should nonetheless be able to see where the lawsuit could go with just a little more factual probing into each by way of a further amendment, especially as to any facts peculiarly in the possession of Moving Defendants at this time.

## IX.   PLAINTIFF TAKES NO POSITION ON WHETHER TO STAY THIS CASE PENDING RESOLUTION OF THE WESTERN DISTRICT OF WASHINGTON ACTION

As indicated throughout this Memorandum, to the extent that the Court is, despite the arguments laid bare herein, inclined to stay this case pending the resolution of the action between certain of the Parties in the United States District Court for the Western District of Washington, Plaintiff takes no position on the same. Again, as indicated above, it is the matter that is pending in the Western District of Washington where two findings were already made that Plaintiff is advocating for herein; that the CR2A governs the relationship between Moving Defendants and Plaintiff, and that it has intellectual property rights in the Morisky Widget at present.[89]

---

[89] Exhibit A.

## <u>CONCLUSION</u>

WHEREFORE, for all of the foregoing reasons, plaintiff MMAS RESEARCH LLC respectfully requests that the Court deny moving defendants DONALD E. MORISKY and MORISKY MEDICAL ADHERENCE RESEARCH LLC's Motion to Dismiss the Amended Complaint in its entirety or, in the alternative, stay this action pending the outcome of the pending lawsuit in the United States District Court for the Western District of Washington referred to herein.

/s/ Paul S. Haberman

_____

Paul S. Haberman, *Pro Hac Vice*
Attorney for Plaintiff, MMAS RESEARCH LLC