1    Amanda L. Bruss (#246249)
     BRUSS LEGAL PLLC
2    7550 E. 53rd Place # 172464
     Denver, CO 80217
3    (415) 271-5754
     amanda@brusslegal.com
4
     *Counsel for Defendants Donald E.*
5    *Morisky, Philip Morisky and Morisky Medication*
     *Adherence Research LLC*
6

7

8
                 **UNITED STATES DISTRICT COURT**
9
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11   MMAS RESEARCH, LLC, a            Case No. 2:22-cv-05141-AB-JC
     Washington limited liability company,
12                                    **DEFENDANTS DONALD E. MORISKY,**
                    Plaintiff,        **PHILIP MORISKY and MORISKY**
13                                    **MEDICATION ADHERENCE**
     v.                              **RESEARCH LLC'S REPLY IN**
14                                    **SUPPORT OF MOTION TO DISMISS**
     UNIVERSITY            OF         **AMENDED COMPLAINT**
15   WOLVERHAMPTON. et al.
16                                    DATE:      January 6, 2023
                    Defendants.       TIME:      10:00 a.m.
17                                    JUDGE:     Hon. André Birotte Jr.
18                                    CTRM:      7B

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION**..................................................................................1

II.   **ARGUMENT** ......................................................................................1

  A.  Plaintiff's copyright claim fails for lack of standing. ...........................1

    *1.  Dr. Morisky, not MMAS, owns the at-issue copyrights under both the CR2A and the Copyright Act, as affirmed by Judge Fitzgerald.*.........................................*1*

    *2.  Plaintiff's reliance on Judge Christel's Report and Recommendation conflates control over the Morisky Widget and possession of a certificate of registration with ownership of a legally protected copyright interest.* ...................*4*

  B.  Plaintiff has failed to establish personal jurisdiction over MMAR or Dr. Morisky. ..........................................................................................6

  C.  Plaintiff's Amended Complaint fails to state a claim for relief because it fails to differentiate its allegations as between the various Defendants, and despite its significant length, merely recites the elements of Plaintiff's claims. ....................................................................9

  D.  While Judge Fitzgerald allowed MMAS leave to again amend its pleadings in *MMAS Research LLC et al. v. The Charité, et al.*, he has already rejected MMAS's standing arguments raised here and in its Second Amended Complaint in that case..........................................................11

  E.  Plaintiff fails to demonstrate – or even argue – that the W.D. Washington case is a sham. ...................................................................12

  F.  Plaintiff has not demonstrated a basis for setting aside the first-to-file rule. ...................................................................................................13

III. **CONCLUSION** ...................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Alaska Cargo Trans. v. Alaska R.R.*, 834 F. Supp. 1216 (D. Alaska 1991)................. 13

*Bashiri v. Sadler*, 2008 WL 2561910 (D. Ariz. June 25, 2008).................................... 14

*Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*, 2018 WL 3581709 (S.D. Tex. July 25, 2018)
................................................................................................................................ 8

*Bralich v. Sullivan*, 2018 WL 1938297 (D. Haw. Apr. 23, 2018)................................. 6

*Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599 (5th Cir.1999) ....................... 14

*Cardenas v. McLane FoodService, Inc.*, 2010 WL 11465450 (C.D. Cal. Oct. 25, 2010)
................................................................................................................................ 7

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ..................................... 15

*Church of Scientology of Cal. v. U.S. Dep't of Army,* 611 F.2d 738 (9th Cir. 1979) .... 14

*Concrete Washout Sys., Inc. v. Terrell Moran, Inc.*, 2015 WL 815835 (E.D. Cal. Feb. 25, 2015)................................................................................................................ 8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)................................................................ 8

*Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir. 2021) ........................... 2

*Ebernice Kekona by Its Pers. Representative v. Alaska Airlines, Inc.*, No. C18-0116-JCC (W.D. Wash. Apr. 11, 2018) ........................................................................... 8

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 5:20-cv-06846-EJD (N.D. Cal. July 19, 2021) .............................................................................................. 7

*Est. of Burne Hogarth v. Edgar Rice Burroughs*, 342 F.3d 149 (2d Cir. 2003) ............. 5

*Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984).......................... 6

*Fossum v. Northwestern Mutual Life Insurance Company*, 2010 WL 11054415 (N.D. Cal. Sep. 16, 2010) ............................................................................................ 13

*Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F. Supp. 2d 439 (S.D.N.Y. 1998) ........... 5

*Global Verge, Inc. v. Rodgers*, 2011 WL 70611 (D. Nev. Jan. 7, 2011) ....................... 6

*Hillman Group, Inc. v. Hy-Ko Products Company*, 2008 WL 3583253 (D. Ariz. Aug. 12, 2008) ................................................................................................... 8

*Imageline, Inc. v. Cafepress.com, Inc.*, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) .. 11

*Janus v. Freeman*, 840 Fed. App'x 928 (9th Cir. 2020) ...................................... 9

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237 (9th Cir. 2015).... 14

*Lopez v. Paragon Systems, Inc.*, 1:13-cv-02037 AWI MJS  (E.D. Cal. Mar. 5, 2014) 13, 14

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) ..................................... 7, 8

*Med-Systems v. Masterson Marketing*, No. 11CV695 JLS (BLM)., (S.D. Cal. Nov. 23, 2011) ................................................................................................... 4

*Menzel v. Scholastic, Inc.,* 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .................. 10

*Perlow v. Mann*, No. 2:13-cv-00749-ODW(SHx) (C.D. Cal. Oct. 22, 2013)............. 6, 7

*Roth v. Walsh Co.,* No. 18-CV-1431 (E.D. Wis. Jan. 24, 2019) ................................. 11

*Three Rivers Provider Network, Inc. v. Med. Cost Containment Prof'ls, LLC*, No. 2:18-CV-135 JCM (GWF) (D. Nev. July 30, 2018)........................................................ 6

*Tween Brands Inv., LLC v. BlueStar All., LLC*, 2015 WL 7721217 (S.D. Ohio Nov. 30, 2015) ................................................................................................... 5

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012) ....... 5

*UCP Int'l Co. v. Balsam Brands Inc.*, 2019 WL 1995768  (N.D. Cal. May 6, 2019)... 13

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ................. 2, 3, 4

*Will Co., Ltd. v. Lee*, 47 F.4th 917 (9th Cir. 2022)........................................................ 9

*Zibiz Corp. v. FCN Technology Solutions*, 777 F. Supp. 2d 408 (E.D.N.Y. 2011) ........ 8

*Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, 2012 U.S. Dist. LEXIS 182797 (E.D. Cal. Dec. 27, 2012)................................................................................. 10

**Statutes**

17 U.S.C. § 101................................................................................................... 2

17 U.S.C. § 103(b) ................................................................................................... 3

iii

17 U.S.C. § 106.................................................................................................. 2

17 U.S.C. § 1202......................................................................................... 10. 11

**Treatises**

3 Melville B. Nimmer David Nimmer, Nimmer on Copyright § 3.06 (2011) ................ 4

California Attorney Guidelines of Civility and Professionalism .................................. 15

## I.    INTRODUCTION

After excising the hyperbole, personal attacks, and unsupported assertions from Plaintiff's Opposition[1] very little remains, none of which is sufficient to overcome the numerous and fatal flaws in Plaintiff's Amended Complaint.  Plaintiff has failed to meet its burden of demonstrating that this Court has either personal jurisdiction over two of the three moving Defendants,[2] or subject matter jurisdiction over this case. Plaintiff's Amended Complaint also fails to set forth sufficient factual allegations *as to any individual Defendant* to put him on notice of the factual basis for Plaintiff's claim for relief.   And Plaintiff fails to allege any facts supporting its conclusory allegation of copyright infringement against Dr. Morisky, Philip Morisky, or Morisky Medication Adherence Research LLC ("MMAR") (collectively, the "Morisky Defendants").  Finally, Plaintiff has not put forward any valid reason why this Court should not apply the first-to-file rule and dismiss this case in favor of the prior action pending in the Western District of Washington ("W.D. Washington Action"), which is already wrangling with the core legal issue in this case – who owns and controls the Morisky IP.  For the reasons set forth below and in Defendants' prior brief, Defendants respectfully request that the Court dismiss this case in its entirety, with prejudice.

## II.    ARGUMENT

### A.    Plaintiff's copyright claim fails for lack of standing.

First and foremost, the Amended Complaint should be dismissed because Plaintiff does not have standing to bring the copyright claim that constitutes its sole federal cause of action and has also failed to allege violation of any of the rights afforded to copyright owners under the Act.

#### 1.    Dr. Morisky, not MMAS, owns the at-issue copyrights under both the CR2A and the Copyright Act, as affirmed by Judge Fitzgerald.

---

[1] Doc. 38.

[2] Philip Morisky resides in California and does not dispute that he is subject to personal jurisdiction here in an individual capacity.

1

Though Plaintiff repeatedly emphasizes that the CR2A was a preliminary settlement agreement,[3] it does not dispute that it was duly executed by the parties, or that Plaintiff is bound by its terms.  Indeed, Plaintiff pins its breach of contract claim in both this case[4] and the W.D. Washington Action[5] on alleged violations of the CR2A. The CR2A unequivocally provides that Dr. Morisky "is the sole and exclusive owner of the federal copyrights in and to the MMAS-4 and the MMAS-8, together with any related trademarks, copyrights, *derivatives to the same* or other intellectual property rights associated with the Morisky Medication Adherence scales or protocols..."[6] Moreover this language in the CR2A simply reaffirms what the Copyright Act provides – that the author of a work owns the copyrights thereto, along with the ability to create and license derivatives.[7]  While Dr. Morisky does not dispute that MMAS created the Morisky Widget, it did not acquire any ownership interest in the Morisky Scales, which Plaintiff acknowledges are an integral part of the Morisky Widget.  As the Ninth Circuit explained in *Unicolors*,

> The Copyright Act defines a derivative work as 'a work based upon one or more preexisting works, such as a[n] ... art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted[, and] ... consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship.' 17 U.S.C. § 101. **The copyright protections for a derivative work are limited to the changes and contributions made by the derivative work's author and are distinct from the copyright protections for the source work**.  Section 103(b) of

---

[3] *See, e.g.* Doc. 38 at 9:12; 9:26 (fn. 3); 20:22.
[4] Amended Complaint (Doc. 22) at pp. 22 – 26, alleging breach of the CR2A.
[5] Doc. 32-3, MMAS's Amended Counterclaims in W.D. Washington Case No. 2:21-CV-01301-DWC ¶¶ 11, 56 – 67.
[6] Doc. 22-12 (CR2A) at Section II (1) (emphasis added).
[7] *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1274 n.2 (9th Cir. 2021) (exclusive rights of a copyright owner "include the reproduction, preparation of derivative works, distribution, public performance, and public display of the copyrighted material."), citing 17 U.S.C. § 106.

the Copyright Act states that "[t]he copyright [of a derivative] work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b).  As this section makes clear, **the author of a derivative work cannot obtain a copyright interest in the source work by registering a derivative work**; rather, **the author of the source work retains all rights and copyright protections in the source work independent of the creation or registration of any derivative works**.[8] While Plaintiff may have obtained a registration certificate for the Morisky Widget from the Copyright Office, that registration does not extend to any third-party works used in the Widget, including the Morisky Scales, and does not give Plaintiff any rights over that preexisting content.

In its Opposition, Plaintiff attempts to undermine Dr. Morisky's assertion of ownership of the Morisky Widget by contending that the Morisky Widget, "contains several other widely used medical adherence tests, specifically 'CUDOS, CUXOS, the National Institute of Drug Abuse Modified Assist Screen ('NIDA-Modified ASSIST'), and the Columbia-Suicide Severity Rating Scale ('C-SSRS').'"  Plaintiff further alleges, "[e]ach of the aforementioned assessments are included in the registered source code of the Morisky Widget."[9]  Unsurprisingly, Plaintiff fails to indicate whether it obtained permission to use any of those "widely used medical adherence tests," from their respective copyright owners.  And it appears that's because it never bothered to do so.  The CUXOS and the CUDOS, for example, were both authored by Dr. Mark Zimmerman.[10]  But Plaintiff failed to obtain permission to use either the CUXOS or the CUDOS in the Morisky Widget, or to license their use to third parties.[11]

---

[8] *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 990 (9th Cir. 2017).
[9] Doc. 38 at 13:15 – 20, citing the Amended Complaint (Doc. 22) at ¶¶ 23 – 24.
[10] *See* Declaration of Mark Zimmerman ("Zimmerman Decl.") ¶¶ 2 – 3, filed concurrently.
[11] Zimmerman Decl. ¶¶ 4 – 8.

The NIDA M-ASSIST was created by the National Institute on Drug Abuse,[12] and The Research Foundation for Mental Hygiene, Inc. owns the copyrights in the Columbia-Suicide Severity Rating Scale ("C-SSRS").[13]  By Plaintiff's own admission, the Morisky Widget is a derivative work comprised of original works authored and owned by others, which Plaintiff has profited from without permission or payment to those copyright owners.  Plaintiff appears to be under the misconception that by including these works in its source code, it somehow obtained an ownership interest in them.  As noted above, it did not.[14]  To the contrary, Plaintiff's ongoing use and licensing of the Morisky Widget infringes multiple copyrights, including Dr. Morisky's.[15]

> **2.    Plaintiff's reliance on Judge Christel's Report and Recommendation conflates control over the Morisky Widget and possession of a certificate of registration with ownership of a legally protected copyright interest.**

Plaintiff relies heavily on its interpretation of Judge Christel's denial of Dr. Morisky's request for a preliminary injunction in the W.D. Washington Action to support its contention that, despite its acknowledgement that the Morisky Widget is a compilation of pre-existing works it did not create, Plaintiff nevertheless owns enforceable copyrights by virtue of its registration of the Morisky Widget.[16]  But Judge Christel's ruling states only that Dr. Morisky, "[d]oes not currently hold the Copyright Registration" to the Morisky Widget,[17] and notes that the Morisky Widget is presently in Plaintiff's exclusive control.[18]  The first finding is undermined by the fact that

---

[12] *See* https://help.greenspacehealth.com/article/81-frequency-drugs-nida-m-assist.

[13] *See* **Exhibit E**, Copyright Public Records System screenshot reflecting registration of the C-SSRS.

[14] *See Unicolors, Inc. v. Urban Outfitters, Inc.*, *supra.*

[15] *Med-Systems v. Masterson Marketing*, No. 11CV695 JLS (BLM)., ECF Nos. 13, 16, at *7 (S.D. Cal. Nov. 23, 2011) ("If the pre-existing work that serves as the basis for a derivative [work] ... is itself protected by copyright, then its unauthorized incorporation into a derivative or collective work constitutes copyright infringement."), quoting 3 Melville B. Nimmer David Nimmer, Nimmer on Copyright § 3.06 (2011).

[16] Doc. 22-1.

[17] Doc. 22-1 at p. 6.

[18] Id. at p. 8.

Plaintiff has failed to actually produce or attach to its pleadings a copy of the alleged registration certificate.[19]   More to the point, possession of a certificate of registration does not mean Plaintiff actually has a protectible copyright interest.   Unlike the U.S. Patent and Trademark Office, the Copyright Office does not undertake to investigate the accuracy of information provided in an application for registration.   As explained by the Second Circuit, quoting the Register, "the Copyright Office's examination of copyright applications is 'necessarily limited,' and should be 'distinguished from the Patent and Trademark Office's process for issuance of patents.   [T]he Office does not make factual determinations with respect to publication or any other act done outside of the Office' and 'will register adverse claims by more than one party,' which are 'not unusual,'"[20]   Thus, even assuming Plaintiff holds a certificate of registration, any resultant presumption of ownership is rebutted by the provisions of the CR2A and Plaintiff's own statements regarding its unauthorized use of third-party work.

It does not appear that Plaintiff disclaimed ownership of the preexisting intellectual property it included in the Morisky Widget source code, which it was required to do when applying for registration.[21]   The Ninth Circuit has stated, "if a third party uses preexisting work in violation of the Copyright Act, the resulting derivative work is not entitled to copyright protection."[22]   Whether the Morisky Widget, stripped of the material Plaintiff acknowledges it does not own, contains any protectable content is unclear, but there is no question that without permission from the authors of the

---

[19] Doc 38-3.

[20] *Est. of Burne Hogarth v. Edgar Rice Burroughs*, 342 F.3d 149, 166 (2d Cir. 2003).

[21] *See Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F. Supp. 2d 439, 441-42 (S.D.N.Y. 1998) ("a certificate of registration does not create an irrebuttable presumption of copyright validity.   In fact, the failure to alert the Copyright Office to relationships between the work for which registration is sought and prior works of others endangers the presumption of validity.") (internal citation omitted); *Tween Brands Inv., LLC v. BlueStar All., LLC*, 2015 WL 7721217, at *12 (S.D. Ohio Nov. 30, 2015) ("If a design is derivative of a pre-existing work, the designer must disclose that fact to the United States Copyright Office at the time of registration.   Courts have invalidated copyright registrations in which the registrant failed to disclose that the design was derivative of a preexisting work. ").

[22] *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) (internal citation omitted).

underlying works, Plaintiff lacks the legal right to use, reproduce, or distribute the Morisky Widget to third parties.

### B. Plaintiff has failed to establish personal jurisdiction over MMAR or Dr. Morisky.

Though Plaintiff – not Defendants – has the burden of proving that exercise of personal jurisdiction is proper,[23] Plaintiff's opposition also fails to point to any allegations in the Amended Complaint that demonstrate general or specific personal jurisdiction over Dr. Morisky or MMAR.

As to the former, Plaintiff claims Dr. Morisky should be deemed a resident of the state of California because he owns property here.[24] Judge Wright rejected this precise argument in *Perlow v. Mann:*

> Perlow argues that Morton is subject to general jurisdiction because he owns property in California, has paid property taxes to the County of Los Angeles since May 2008, and received "benefits" from owning the property like "trash removal, fire and police services, the use of public beaches, etc." Perlow adds that Morton has minimum contacts with the forum state because he frequently conducts business in California . . .
>
> The Court finds that Morton is not subject to general jurisdiction in

---

[23] *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984) ("The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists.").

[24] Plaintiff also again references Dr. Morisky's relationship with UCLA, but his limited relationship with that entity is also not sufficient to establish general personal jurisdiction here. *See Global Verge, Inc. v. Rodgers*, 2011 WL 70611 at *6 (D. Nev. Jan. 7, 2011) ("To extend general jurisdiction against a person whose only contact with a forum is employment by a company incorporated in the forum and an employment related contract with that same company goes beyond reason."); *Bralich v. Sullivan*, 2018 WL 1938297, at *17 (D. Haw. Apr. 23, 2018) ("Research affiliation with an entity in the forum is also not sufficient for general jurisdiction."); *Three Rivers Provider Network, Inc. v. Med. Cost Containment Prof'ls, LLC*, No. 2:18-CV-135 JCM (GWF), at *5 (D. Nev. July 30, 2018) ("Affiliation with a corporation located in Nevada does not automatically support a court's exercise of general jurisdiction over a defendant in Nevada.").

California.  First, Morton's Manhattan Beach property does not establish general jurisdiction.  While real property is a contact with the forum state, the mere presence of such property is not dispositive of general jurisdiction.  Here, Morton's Manhattan Beach house is a single contact with California, but this sole contact does not render Morton—a Las Vegas resident—"essentially at home" in California. . . . Finally, because Morton's California house has nothing to do with the defamatory email that is the subject of this litigation, the Court is not inclined to stretch due process in order to accommodate the conclusory jurisdictional facts that Perlow has presented.[25]

Here, as in *Perlow*, the fact that Dr. Morisky owns property in California does not establish general jurisdiction,[26] and none of the claims have anything to do with that home, which Dr. Morisky doesn't even inhabit.[27]

As to MMAR, Plaintiff appears to contend that Philip Morisky's personal residence in California subjects the entity he works for to general personal jurisdiction in this state.[28]  Again, Plaintiff fails to provide any legal basis for this argument, likely because none exists.  As explained by the Ninth Circuit in *Martinez v. Aero Caribbean,* "a corporation may be subject to personal jurisdiction only when its contacts with the forum support either specific or general jurisdiction.  In the almost seventy years since *International Shoe,* the Supreme Court has never suggested anything else."[29]  "The

---

[25] *Perlow v. Mann*, No. 2:13-cv-00749-ODW(SHx), at *5-6 (C.D. Cal. Oct. 22, 2013) (internal citations omitted).

[26] *See also Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 5:20-cv-06846-EJD, at *1 (N.D. Cal. July 19, 2021) ("Courts in this Circuit have required far more than property ownership prior to the exercise of general jurisdiction.") (quoting *Cardenas v. McLane FoodService, Inc.*, 2010 WL 11465450, at *2 (C.D. Cal. Oct. 25, 2010)).

[27] See Declaration of Donald Morisky ("Morisky Decl."), ¶¶ 8 – 10, filed concurrently.

[28] Plaintiff also appears to suggest that its service of the Amended Complaint on Philip Morisky in California somehow warrants the exercise of personal jurisdiction over MMAR.  The Ninth Circuit has expressly rejected the application of tag jurisdiction over a corporation under such circumstances.  *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014).

[29] *Martinez v. Aero Caribbean*, 764 F.3d at 1068.

Supreme Court's . . . decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation"[30]  "The Court in *Daimler* . . . emphasized that the 'paradigm' fora for general jurisdiction are a corporation's place of incorporation and principal place of business.  Only in an 'exceptional case' will general jurisdiction be available anywhere else."[31]  "An officer of a corporation is not the corporation, even when the officer acts on the corporation's behalf."[32]  Thus, courts have consistently found that a company's employee's residence or presence in a state does not subject it to personal jurisdiction there.[33]  Plaintiff has failed to make any showing that MMAR has any physical presence in the state of California.

Plaintiff next contends that Defendants "purposefully directed their activities in this District."[34]  But Plaintiff fails to cite to any allegations in the Amended Complaint describing *any* actions by Dr. Morisky or MMAR that took place in California.  Instead, Plaintiff hangs its hat on an unsigned alleged agreement to which neither Dr. Morisky nor MMAR were parties.  It is axiomatic that, "[a] forum selection clause does not apply to a nonresident defendant, unless the party assented to it."[35]  Plaintiff

---

[30] *Id.* at 1070.

[31] *Id.*, citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014).

[32] *Martinez v. Aero Caribbean*, 764 F.3d at 1068.

[33] *See, e.g. Zibiz Corp. v. FCN Technology Solutions*, 777 F. Supp. 2d 408, 419-20 (E.D.N.Y. 2011) ("courts in other jurisdictions have consistently found that the mere presence of an employee within the forum state was insufficient to confer general personal jurisdiction over an out-of-state corporate defendant," citing cases); *Hillman Group, Inc. v. Hy-Ko Products Company*, 2008 WL 3583253, at *8 (D. Ariz. Aug. 12, 2008) ("The personal decision of an employee to reside in a particular state does not subject his employer to general jurisdiction in that state."); *Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*, 2018 WL 3581709, at *11 (S.D. Tex. July 25, 2018) ("Merely employing residents of the forum state is not sufficient to establish general jurisdiction over a corporate defendant… Although Plaintiff alleges that 'one-half of BTI-Florida's workforce' resided in and performed their duties in Texas, those contacts do not amount to an exceptional circumstance that would permit the court to exercise general jurisdiction over Boyd Tech Florida."); *Ebernice Kekona by Its Pers. Representative v. Alaska Airlines, Inc.*, No. C18-0116-JCC, at *3 (W.D. Wash. Apr. 11, 2018) ("Plaintiff suggests that Defendant's business operations in Washington— amounting to 10 percent of its workforce and 14 percent of its revenue—are so great that it is "at home" in Washington as well. The Court disagrees.").

[34] Doc. 38 at 22:3 – 21.

[35] *Concrete Washout Sys., Inc. v. Terrell Moran, Inc.*, 2015 WL 815835, at *5 (E.D. Cal. Feb. 25, 2015).

has made no showing, nor can it, that any of the Morisky Defendants assented to the forum selection clause in this unsigned document.

*Will Co. v. Ka Yeung Lee*, upon which Plaintiff relies, has nothing in common with this case. *Will Co.* involved allegations of copyright infringement against a video-hosting site based in Hong Kong.[36]  The Ninth Circuit found that the complaint alleged numerous actions taken by defendants to target and market to US consumers, and so found that they had expressly aimed their conduct at the US market, subjecting the foreign defendants to jurisdiction in the US under Fed. R. Civ. P. 4(k)(2).[37]  Plaintiff in the case at bar does not allege Defendants marketed an infringing product at all, let alone one that targeted California consumers. *Janus v. Freeman*, also cited by Plaintiff, likewise offers no support for Plaintiff's claims insofar as it held that Janus, a California resident, "failed to establish a prima facie case that [defendant] engaged in conduct that connected him to California," despite alleging that the defendant made defamatory comments about him to California residents.[38]

As set forth in Defendants' prior memorandum, Dr. Morisky and MMAR's alleged actions took place where they reside – Nevada – and any injury allegedly suffered by MMAS would be felt where it resides – Washington.  Plaintiff has failed to allege facts supporting the exercise of personal jurisdiction over Dr. Morisky or MMAR here.

**C.    Plaintiff's Amended Complaint fails to state a claim for relief because it fails to differentiate its allegations as between the various Defendants, and despite its significant length, merely recites the elements of Plaintiff's claims.**

Even if Plaintiff could cure the jurisdictional defects discussed above, its

---

[36] *Will Co., Ltd. v. Lee*, 47 F.4th 917 (9th Cir. 2022).
[37] *Id.*
[38] *Janus v. Freeman*, 840 Fed. App'x 928, 932 (9th Cir. 2020) ("Janus emphasizes the allegations and evidence that Freeman corresponded over Facebook Messenger with employees of his company, which Freeman knew to be based in California, and made defamatory comments in those posts. But the mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction under *Walden*.").

9

Amended Complaint – like the original Complaint – fails to provide any Defendant with notice of the specific allegations being made against him or it.[39]  Instead, Plaintiff makes generalized, conclusory allegations against 'Defendants' as if they were one person.  This shotgun approach to pleading is insufficient to state a claim as to any individual Defendant.[40]

Plaintiff also fails to allege specific acts or omissions supporting its copyright infringement claims against the Morisky Defendants.  As noted in Plaintiff's opposition, the Amended Complaint merely states that Defendants, "have infringed and will continue to infringe the Morisky Widget Copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same outside of the confines of the Agreement or any other valid agreement."[41]  This sort of conclusory allegation – which even Plaintiff characterizes as "catchall allegations," is insufficient to state a claim for relief under *Iqbal/Twombly.*[42]

Plaintiff's attempt to reframe its misattribution claim as one brought under the Digital Millennium Copyright Act ("DMCA") also fails.  "To state a claim for removal of CMI [Copyright Management Information] under 17 U.S.C. § 1202(b)(1), a plaintiff must allege that a defendant: (1) without authority of the copyright owner or the law; (2) intentionally removed or altered CMI; (3) knowing or having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal an infringement of the federal copyright laws.[43]  "§ 1202(b)(1) [also] require[s], at this stage, an allegation

---

[39] Defendants' recitation of the 'facts' alleged in the Amended Complaint in their prior memorandum demonstrates that, while voluminous, the Amended Complaint is comprised mainly of boilerplate allegations rather than substantive facts.

[40] *See Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, 2012 U.S. Dist. LEXIS 182797, at *11 (E.D. Cal. Dec. 27, 2012) (finding complaint deficient where, "[a]side from a few defendant-specific allegations, the remainder of the complaint consists of allegations against "defendants," making it impossible to discern which allegations are targeted against which defendants.").

[41] Doc. 38 at 19:15 – 18.

[42] *Menzel v. Scholastic, Inc.,* 2018 WL 1400386, at *4 (N.D. Cal. Mar. 19, 2018) ("Mr. Menzel has alleged on information and belief that Scholastic, *e.g.*, used more copies of his photographs than permitted under the license agreements, but that allegation is not based on any factual allegation that makes the inference of culpability plausible").

[43] *Imageline, Inc. v. Cafepress.com, Inc.*, 2011 WL 1322525, at *8 (C.D. Cal. Apr. 6,

1    that an original copyrighted work contained CMI."[44]

2          Plaintiff's allegation that Defendants, "directed Wolverhampton to improperly

3    replace MMAS Research's Morisky Widget Copyright notice with Donald Morisky's

4    copyright notice on the Second Study Posting" does not satisfy any of the above

5    elements.  Copyright Management Information ("CMI") is defined as, "any of the

6    following information conveyed in connection with copies or phonorecords of a work

7    or performances or displays of a work."[45]  "The statute goes on to list eight types of

8    CMI, as relevant here: (2) the name of, and other identifying information about, the

9    author of the work; (3) the name of, and other identifying information about, the

10   copyright owner of the work, including the information set forth in a notice of

11   copyright; and (7) identifying numbers or symbols referring to such information or

12   links to such information."[46]

13         As pleaded in the Amended Complaint, the underlying work Plaintiff alleges the

14   "Fraudulent Acknowledgement" was posted with ***was not the Morisky Widget***, but the

15   Second Study Posting – an article authored by Wolverhampton.  Plaintiff does not

16   allege that the ***Morisky Widget*** included any CMI at all, nor does it mention the DMCA

17   at all in its pleadings.  The Amended Complaint also fails to allege that any of the

18   Defendants altered or removed CMI ***from copies of the Morisky Widget*** in order to

19   induce, enable, facilitate, or conceal further infringement.  Plaintiff's eleventh-hour

20   attempt to reframe its misattribution claim as a DMCA violation is simply not

21   consistent with what it alleged in its Amended Complaint.

22        **D.**    **While Judge Fitzgerald allowed MMAS leave to again amend its**
23   **pleadings in *MMAS Research LLC et al. v. The Charité, et al.*, he has already**
24   **rejected MMAS's standing arguments raised here and in its Second**
     **Amended Complaint in that case.**

25        Plaintiff is correct that Judge Fitzgerald dismissal of Plaintiff's First Amended

26

27     2011), citing 17 U.S.C. § 1202(b)(1).
     [44] *Id.*
28   [45] 17 U.S.C. § 1202.
     [46] *Roth v. Walsh Co.,* No. 18-CV-1431, at *4 (E.D. Wis. Jan. 24, 2019).

**Complaint in *MMAS Research LLC et al. v. The Charité, et al.*, was without** prejudice.  But, in finding that Plaintiff lacked standing to bring copyright infringement claims for use of the Morisky Widget, he expressly considered and rejected all of the arguments Plaintiff raises in its Opposition here.  For example, Judge Fitzgerald noted MMAS "argue[d] that its holding of the registration and control of the Morisky Widget was recently acknowledged by the United States District Court for the Western District of Washington," but found that the W.D. Washington decision indicated that MMAS would assign ownership of the Morisky Widget to Dr. Morisky "at the expiration of the 'transition period," which had already passed.[47]  Judge Fitzgerald therefore found that under the CR2A, copyright in the Morisky Widget had been assigned to Dr. Morisky.

And despite Plaintiff's protestations that the problems in its pleadings – both here and in that case – are curable, it failed to remedy them in its December 5, 2022 Second Amended Complaint in that case.[48]  Instead, it merely added its already-rejected legal arguments for standing based on the CR2A and W.D. Washington preliminary injunction ruling to its pleading.[49]  The reason for this is simple – Plaintiff does not have standing to bring the at-issue claims.  Its failure to cure the defects in that pleading demonstrate the futility in permitting Plaintiff yet another bite at the apple here.

**E.    Plaintiff fails to demonstrate – or even argue – that the W.D. Washington case is a sham.**

In arguing that the *Noerr-Pennington* doctrine should not apply here, Plaintiff misapplies the sham pleading exception.  Plaintiff argues that the instant motion is "an anticompetitive weapon" against Plaintiff.[50]  Not only is that factually inaccurate, it focuses on the wrong pleadings.  To avoid application of the *Noerr-Pennington*

---

[47] Doc. 32-5 at p. 6.
[48] *See* **Exhibit F** hereto.
[49] *Id.* ¶¶22 – 36.
[50] Doc. 38 at 29:1 – 3.

doctrine, Plaintiff must show that the action alleged to be protected by the doctrine is a sham.  In this case, Plaintiff would have to demonstrate that Dr. Morisky's W.D. Washington Action "(1) was objectively baseless and (2) was brought with an unlawful motive."[51]  "Under *Noerr-Pennington*, in order not to 'chill' legitimate lobbying activities, it is important that a plaintiff's complaint contain specific allegations that the *Noerr-Pennington* Doctrine does not apply."[52]  Conclusory allegations are insufficient to strip the defendants of the protection the doctrine provides."[53]  Far from pleading specific factual allegations, Plaintiff's Amended Complaint fails to even mention the doctrine.  Moreover Judge Fitzgerald's finding that Dr. Morisky owns the copyrights in the Morisky IP – including the Morisky Widget – refutes any argument that Dr. Morisky's copyright infringement claim against MMAS is "objectively baseless."

### F.    Plaintiff has not demonstrated a basis for setting aside the first-to-file rule.

Plaintiff argues that the first-to-file rule should not apply because (1) Plaintiff has not alleged the same facts in connection with tort claims against the Morisky Defendants in that case as are alleged here, and (2) the parties in the two actions are not identical.[54]  "But "[t]he parties and issues need not be identical for the first-to-file rule to apply."[55]  "That parties are not required to be exactly identical logically prevents

---

[51] *UCP Int'l Co. v. Balsam Brands Inc.*, 2019 WL 1995768, at *10 (N.D. Cal. May 6, 2019).

[52] *Alaska Cargo Trans. v. Alaska R.R.*, 834 F. Supp. 1216, 1227 (D. Alaska 1991).

[53] *Id.  See also UCP Int'l Co. v. Balsam Brands Inc.*, 2019 WL 1995768, at *10 ("Where claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation exception with specificity.").

[54] Doc. 38 at p. 28 – 29.  Plaintiff's discussion of this issue also references an alleged "bogus GMRF report" and alleged, "written, flagrant interference in Plaintiff's contractual and/or intellectual property rights," as supporting its claim that this motion to dismiss is a sham.  While its not clear how any of these assertions are connected, the fact remains that neither this motion nor this action are the focus of a sham exception inquiry.  Plaintiff instituted this action – if it is a sham, that would reflect Plaintiff's misconduct, not Defendants.'  Moreover, Dr. Morisky's decision not to include his company in the W.D. Washington Action is no great mystery.  He sued MMAS for infringement of copyrights he – not his company – owns.

[55] *Fossum v. Northwestern Mutual Life Insurance Company*, 2010 WL 11054415, at *2 (N.D. Cal. Sep. 16, 2010).  *See also Lopez v. Paragon Systems, Inc.*, 1:13-cv-02037 AWI MJS, at *6-7 (E.D. Cal. Mar. 5, 2014) ("As with the parties, the first-to-

a litigant from unnecessarily adding a party or claim in a case involving the same transaction or occurrence solely to defeat the first-to-file rule."[56]  It is not misleading to state that, should the W.D. Washington Court find that Plaintiff does not have the right to license or bring claims for alleged infringement of the Morisky Widget, Plaintiff's claims against Wolverhampton here would fail, including those sounding in contract.  Even assuming Plaintiff's attempt to enforce licenses for content it doesn't own could form the basis for a breach of contract claim, absent a viable federal cause of action Plaintiff's state law claims do not belong in this Court.

As to timing, Plaintiff's claim that the two cases are "largely at the same stage" is not accurate.  The W.D. Washington Action has moved past the pleading stage, whereas here, Defendant Wolverhampton's anticipated motion to dismiss has not yet been filed.  More to the point, one of the primary factors underlying application of the rule is judicial efficiency.[57]  Thus, even if the W.D. Washington Action were only somewhat further along, allowing Defendant to litigate the same legal issues in two forums would serve only to increase the burden and expense of litigation and present a clear risk of conflicting rulings.[58]

## III.   CONCLUSION

Despite its length, Plaintiff's Opposition is surprisingly light on substantive argument and lacks legal support for its various allegations.  Plaintiff's Amended Complaint, like the pleading before it, fails to set forth sufficient facts to establish

---

file rule does not require that the issues in the two actions be identical.  Rather, the issues need only be 'substantially similar.") (internal citations omitted).

[56] *Bashiri v. Sadler*, 2008 WL 2561910, at *3 (D. Ariz. June 25, 2008).

[57] *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) ("When applying the first-to-file rule, courts should be driven to maximize "economy, consistency, and comity."") (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir.1999)).

[58] *Lopez v. Paragon Systems, Inc.*, 1:13-cv-02037 AWI MJS, at *7 (E.D. Cal. Mar. 5, 2014) ("the first-to-file rule is rooted in principles of comity. 'The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.'") (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).).

jurisdiction or venue, and specifically adds allegations that mirror those in the W.D. Washington Action, highlighting the applicability of the first-to-file rule.

Plaintiff appears to be asking the Court to permit this case to go forward solely because, in Plaintiff's mind, Defendants are shameless, disingenuous, manipulative, shady, greedy, frivolous absentee landlords.[59]   Even assuming these derogatory characterizations were accurate, and they are not, they are insufficient to overcome the pleading defects at issue.   Moreover the W.D. of Washington is already addressing the question of copyright ownership, and the remaining allegations in this case belong in state court.   Permitting this case to move forward here will only serve to waste judicial resources and increase the cost of litigation for the parties.

Plaintiff's request that it be permitted to engage in, "a little more factual probing . . . by way of a further amendment" should be denied.   Plaintiff has had adequate opportunity to attempt to put together a legally sufficient pleading[60].   It has failed to do so.   For these reasons, Defendants respectfully request that the Court dismiss this case with prejudice.

DATED:  December 9, 2022           Respectfully submitted.

s/ *Amanda L. Bruss*
Amanda L. Bruss
BRUSS LEGAL, PLLC
7550 E. 53rd Place # 172464
Denver, CO 80217
amanda@brusslegal.com
(415) 271-5754

*Counsel for Defendants Donald E. Morisky,*
*Philip Morisky and Morisky Medication*
*Adherence Research LLC*

---

[59] These words were taken directly from Plaintiff's brief.  Defendants have largely ignored the personal attacks peppered throughout Plaintiff's memorandum but will note that they do not comport with Section 8 of the California Attorney Guidelines of Civility and Professionalism.  *See also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 671 (9th Cir. 2020) ("We agree with the general principle that parties to litigation should refrain from employing ad hominem rhetoric.").

[60] Plaintiff has also failed to comply with the local rules or the Court's Standing Order regarding requests for amendment, in that it has failed to provide a redline of the proposed amendment.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Donald E. Morisky, Philip Morisky and Morisky Medication Adherence Research LLC certifies that this brief contains 5,441 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 9, 2022

*s/ Amanda L. Bruss*
Amanda L. Bruss

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022 I caused a true and correct copy of the foregoing Memorandum to be filed via the CM/ECF system, which will serve a notice of electronic filing to all counsel of record.

*s/ Amanda L. Bruss*
Amanda L. Bruss