Michael Chen, CA SBN 218863
Michael Chen Law Offices
2975 Huntington Dr. Ste. 101
San Marino, CA 91108
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MMAS RESEARCH LLC,<br>A Washington limited liability Company<br><br>Plaintiff,<br><br>vs.<br><br>University of Wolverhampton et al.<br><br>Defendants. | Case Number:   2:22-cv-05141-AB-JC<br><br>**SECOND AMENDED COMPLAINT**<br><br>1.  TORTIOUS INTERFERENCE WITH CONTRACT<br>2.  UNFAIR COMPETITION UNDER BUS & PROF CODE 17200 et sec<br><br>Judge:        Hon.<br>Trial Date:   TBD<br>Action Filed: September 1, 2021 |

SECOND AMENDED COMPLAINT

Plaintiff hereby provides this Second Amended Complaint and alleges as follows:

THIS ACTION, THE PARTIES AND RELEVANT NON-PARTIES

Plaintiff MMAS RESEARCH LLC (hereinafter "MMAS Research" or "Plaintiff"), by and through its undersigned attorneys, brings this Second Amended Complaint per leave granted by this Court dismissing (without prejudice)  Plaintiff's  claims of

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

copyright infringement but allowing amendment of The Third and Fourth causes of action. See Docket No 56. Accordingly Plaintiff brings this suit to recover damages resulting from acts by Defendants that constitute (1) Tortious Interference with Contractual Relationships and (2) Unfair Competition based on the following allegations:

1.      Plaintiff is a Washington limited liability company, with a non-resident California business license.  *See* California Business License, Attached to Exhibit 17, Rodney Watkins Declaration.

2.       Defendant Donald Morisky is on information and belief an individual and resident of the State of Nevada, though continues to own property in the State of California and is employed by UCLA.

3.      Defendant Philip Morisky is, on information and belief, an individual and resident of the State of California and the Chief Executive Officer of MMAR Research LLC.

4.      Defendant MORISKY MEDICATION ADHERENCE RESEARCH LLC ("MMAR") is on information and belief,  a Nevada limited liability company with offices located at 294 Lindura Court, Las Vegas, NV, 89138.

5.      Defendant Hana Morrissey is an individual and an employee of  the University of Wolverhampton and a former employee of Plaintiff who has been voluntarily released from the case as a Defendant without prejudice. The University of Wolverhampton is a named Defendant but has currently been dismissed from this case without prejudice.

6.      Dr. Michael Zimmerman is an individual, and a Medical Doctor who licensed  the Morisky Widget for use in Medical Studies and has reported those studies in medical journals.

7.      Plaintiff is informed, believes, and thereupon alleges that Defendants, individually and/or in concert, were and are in some manner responsible for the

actions, acts, and omissions herein alleged, and for the damages caused by Defendants and are, therefore, liable for the damages caused to Plaintiff.

8.   Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damages to Plaintiff.

9.   Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated , individually and/or in concert, in the acts or conduct alleged herein.

## JURISDICTION AND VENUE

10.   This is an action under California State Law arising under  the common law of tort and under the State of California  Business and Professions Code Section 17200 et sec.

11.   This Court has original diversity jurisdiction over the  herein pleaded California state law claims under 29 USC 1332 . The parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.   Venue is proper in this District pursuant to 28 U.S. C. §1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

13.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendant is subject to personal jurisdiction in this District.

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

# BACKGROUND FACTS AND PROCEDURAL HISTORY

## A. Background of the Relationship Between Dr. Morisky and Plaintiff MMAS Research, LLC

14.     Donald Morisky, ScD, is a professor at the University of California, Los Angeles Fielding School of Public Health. He devised the "Morisky Medication Adherence Scale (MMAS)" an assessment tool used by practitioners in clinical settings to measure medication non-adherence in a variety of patient populations.

15.     Dr.  Morisky relationship with Steven Trubow (Trubow) began in the spring of 2014 when  a national team consisting of Trubow, Drs David Kupfer and Robert Gibbons were awarded  a three year Health Resources Service Administration (HRSA) Grant for Federally Qualified Health Centers in Atlanta Georgia. See Exhibit 2: Declaration of Steve Trubow.

16.     Dr. Morisky provided a limited use MMAS-8 license for the Grantee, the Atlanta FQHCs to administer, score, and report the results of MMAS-8 in a Mental Health Information System (MHIS) operated by Kupfer, Gibbons and Trubow. The HRSA Grant ended in the Spring of 2016 and the MHIS system was never used again.

17.     Dr. Morisky established MMAS Research, LLC in Los Angeles California in 2012. In Sept 2016 Morisky moved MMAS Research LLC from Los Angeles to Renton Washington where it was reorganized under the laws of Washington in December 2016.Plaintiff is owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8- 816-517 (See Exhibit 4: Copyright Registration dated December 3, 2019) (the "Morisky Widget Copyright").

18.     The Morisky Widget is an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors, as further described below,

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

and which includes registered translations of the widely used "Morisky Medication Adherence Scale (8- item)" ("MMAS-8") and "Morisky Medication Adherence Scale (4-item)" ("MMAS-4") tests, along with other validated assessments, specifically the Clinically Useful Depression Outcome Scale ("CUDOS") and Clinically Useful Anxiety Outcome Scale ("CUXOS") assessments, which are included in the registered source code of the Morisky Widget as part of its federal copyright registration.  See CR2A Settlement Agreement, Exhibit 1.

19.     Plaintiff is the owner of the "Global Medication Reconciliation Form" software (the GMRF), copyright November 1, 2020 (the "GMRF) Copyright"). See Exhibit 2 CR2A, identified separately as Exhibit 3.

20.     The GMRF is completely different than the Morisky Widget.  It is not a derivative of the Morisky Widget, as has been alleged.

**B. Dr. Morisky Seeks to End His Relationship with Mr. Trubow.**

21.     From January 2017- July 2019, over 200 of the worlds largest pharmaceutical firms, leading hospitals and clinics around the world signed licenses to use the Morisky Widget in clinical trials, hospitals, and clinic in over 80 languages in 100 countries. See Exhibit2 Statement of Steve Trubow paras 1-26

22.     However, Dr. Morisky, and Phillip Morisky began to interfere and, among other misdeeds, posted messages to Morisky Widget licensees that MMAS Research and Steven Trubow had no legal right to use the Morisky Medication Adherence Scales.  This conflict resulted in continuous litigation between the MMAS Research and the Morisky parties from July 2019 until December 6, 2020.Id at 27.

**C. The Parties Resolve All Disputes and All Claims Are Dismissed with Prejudice in the CR2A Settlement Agreement**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

23.     In December 2020 the Morisky and Trubow parties to the pending state and federal actions reached a settlement  to resolve all of their disputes.  The agreement was reduced to writing and entered into by the  parties  pursuant  to Washington  Civil  Rule  2A  on  December  6,  2020  ("Settlement Agreement" or "CR2A Agreement" ).

24.     In the CR2A Agreement, the Plaintiff and Defendant specifically agreed to dismiss all claims of  previous litigation—which included Morisky previous claims that the Widget was just a derivative of the MMAS-4 and -8 tests— with prejudice. The CR2A Settlement Agreement specifies the dismissal at paragraph 13, and memorializes the parties' agreement to dismiss all of their prior litigation with prejudice:

*MMAS Research, LLC, Steven Trubow, Donald Morisky, Susan Morisky, Phillip Morisky, Marty Morisky and Morisky Medication Adherence Research, LLC, together with its affiliates MMAS Research, Italy, and MMAS Research, France, each agree to release one another and their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, servicers, representatives, attorneys, and affiliates, present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouse, insurers, and all persons acting by, through, under, or in concert with any of the aforesaid persons or entities, or any of them (the "Releasors") from any claims they may have against each other and their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, servicers, representatives, attorneys, and affiliates, present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouse, insurers, and all persons acting by, though, under, or in concert with any of the aforesaid*

6
**SECOND AMENDED COMPLAINT**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

*persons or entities, or any of them (the "Releasees) or any of them, whether known or unknown, asserted or unasserted that could have been made that relate to, arise out of, or are connected in any way with any claim or dispute raised by any Party against another. **Each of the Parties also further agree to dismiss the claims asserted in the Washington lawsuit and Nevada federal district court lawsuit now pending against each other with prejudice and without any award of costs or attorneys' fees in any action**. (Emphasis Added).*

25.     Among other things, the dismissed Washington and Nevada lawsuits between the parties included claims that the Morisky Widget was nothing more than a derivative of Defendants' MMAS-4 and MMAS-8 tests.  Having been dismissed with prejudice by Defendants themselves, such issues should not be before this court. See Exhibit 2 Statement of Steve Trubow paras 28-30

26.     Having resolved the  legal actions between the parties with the Settlement Agreement, MMAS Research geared up and assembled a  legal team to successfully pursue Morisky intellectual property claims consistent with pertinent provisions of the  Settlement Agreement.

27.     The Morisky Parties had agreed to cooperate with and assist MMAS Research in pursuit of claims and licenses, but they regularly obstructed MMAS Research's efforts to execute the Settlement terms, despite their  receiving financial benefits from them:. See Exhibit 2 Statement of Steve Trubow paras30-34.

**E. Current Action**

28.     The current action results directly from the comprehensive and ongoing nature of the CR2A Settlement agreement.  The parties intended, to make irrelevant all prior disputes and charged MMAS to a continued program of action to generate

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

revenue from existing settlement claims and prospective ones through licensing. (MMAS Research is so charged in CR2A Exhibits 2, 3 and 4).

29. In Section 1 of the CR2A, both Plaintiff and Defendant agreed that MMAS Research owned the GMRF:

> All copyrights, trademarks and related intellectual property for the GMRF ("GMRF IP") shall continue to be owned and controlled by Steven Trubow and/or MMAS Research, LLC; provided, however, that if MMAS Research, LLC is the holder of such GMRF IP, it may only do so under a different corporate name or DBA to which it has up to 60 days from the execution of this Agreement to transition and that complies with Paragraph 8 of this Agreement (prohibiting, among other things, the use of the terms MORISKY or MMAS except in connection with actions related to "Claim Settlements" (as defined herein) in which MMAS Research, LLC is a party). Steven Trubow represents that the GMRF does not contain any content that would infringe or qualify as a copyright derivative of any of the Morisky IP or the MMAS IP, and the Morisky Party is relying on that representation to enter into this Agreement.

30. The current action concerns Plaintiff's inability to proceed with the Settlement Agreement's program of claim settlements and licensing due to Defendant's knowing intentional interference and acts of unfair competition as spelled out below.

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

**F. Instead of  Contemplated Cooperation in Claim Settlement and Licensing, Defendants Obstructed Fulfillment of the Agreement**

31.    As provided under the CR2A Settlement Agreement Exhibit 3 claimants and Exhibit 4 licensees are permitted to use  the Morisky Widget and the Global Medication Reconciliation Form.

32.    Although the CR2A Settlement Agreement contemplated cooperation between the parties and specified that Defendants cooperation in claims and licensing matters is essential, interference has occurred regularly.   The Agreement states: *"The Morisky Party and MMAR agrees [sic] to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect… "The list of Morisky Widget licensees set forth in **Exhibit 4** to this Agreement represents the minimum number of all such License Agreements. Donald Morisky agrees to assume all ongoing obligations and responsibilities under all License Agreements assigned or serviced by Donald Morisky by the completion of the Transition Period.* [1]   See: Exhibit 1, CR2A Settlement Agreement paragraph 10.

33.    Rather than the foregoing mentioned cooperation, Defendants pursued acts amounting to tortious interference and unfair competition.

## COUNT 1: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

34.    This Count 1 of Tortious Interference with Contractual Relationships incorporates the facts set forth in the previous paragraphs1-29.

35.    A claim of Tortious Interference with  contractual relationships implicates several elements, each of which are set forth and averred in detail herein.

9
**SECOND AMENDED COMPLAINT**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

Those elements are:   The Plaintiff had a contractual relationship with a third party; The  Defendant knew about the contract at the time of the interference; The Defendant interfered intentionally; The interference was improper; The Defendants conduct led to a breach of the contract; and the Plaintiff suffered damage as a result.

36.     MMAS pleads the facts of tortious interference, with reference to those respective elements.

## A. Defendants Pattern of Intentional Disruption of Contractual Agreements, even Agreements they Signed and Benefitted From

37.     Numerous settlements and contractual relationships have been entered into by Plaintiff – also benefitting Defendants-- licensing third parties to use the highly sought Morisky Widget  As detailed above, these contractual relationships are integral to the ongoing CR2A Settlement Agreement.

38.     The Settlement Agreement also specifies that the Morisky parties shall support Plaintiffs licensing efforts.  As referenced above, it states that the Morisky Parties agreed to provide full access to the Morisky Widget and support as needed to all licensees as long as licenses to the Morisky Widget are in effect.

39.     The Morisky Defendants at first complied and provided that support they had agreed to, including personally signing licensing documents and  in turn sharing in the  licensing proceeds.

40.     However, as mentioned above in (para.25) there came a time when Defendants secretively decided to cancel Plaintiff from the picture.  They drastically changed their course of  action to intentional disruption of the agreements that Plaintiff had entered into on all of their behalf's.  Rather than providing  support, the Morisky Defendants  turned their efforts toward a feverish pattern of interference and undermining of the contractual relationships.  Even knowing that third parties were depending on this important medical diagnostic procedure, Defendants have

subjected licensees to a sequence of disparagement,  negative internet postings, threatening contacts,  and then legal threats to induce breach or abandonment, as well as disingenuous legal behavior.

41.    This  present action for tortious interference brings  to bear the Morisky Defendants intentional  and unjust abrogation of their support obligation, including GMRF protocol interference, interference with claim settlements, and intentional disruption of licensing agreements. These efforts have been pervasive. More than 12 agreements have been disrupted by Defendants knowingly improper inference.   See Exhibit 2 Statement of Steve Trubow.

**B. Interference with License Agreements with University of Wolverhampton, Riga Stradens, University of Leeds, Daichi Sanyo UK, Novartis Argentina, Novartis Korea, Merck, Iquiva, and Johnson and Johnson**

42.    Defendants actions to cancel Plaintiff from the picture, including disparagement and direct threats, have  successfully undermined existing licenses, started with  University of Wolverhampton, and proceeding with others.  At least twelve licensees have breached and abandoned; some demanded indemnification or refunds.

43.    On June 9, 2018, prior to the signing of the C2RA Agreement, a Morisky Widget MMAS-8 License Agreement (the "Wolverhampton License Agreement", Attached as Exhibit 5) was entered into between Wolverhampton and Plaintiff. This continued into 2021 in full accordance with Authorization in the CR2 Settlement Agreement.

44.    Neither Defendant Donald Morisky nor Defendant Phillip Morisky nor Defendant MMAR are parties to the  Wolverhampton License Agreement, but the Morisky parties interfered and derailed that relationship.

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

45.     The Wolverhampton Agreement specifies that any legal action arising from the same is to be brought in Los Angeles, California. See Wolverhampton License Agreement Exhibit 5.

46.     Thus the Wolverhampton License Agreement was executed between only Plaintiff and the University of Wolverhampton.  And  it was carried out by Plaintiff according to its terms,( including training programs and technical support) until the Morisky Defendants tortiously interfered  with the Agreement in 2021.-2022. (See Exhibit 6 email from Wolverhampton demonstrating appreciation for training and support provided by Plaintiff to the University of Wolverhampton program).

47.     Defendants Donald Morisky, Philip Morisky, and MMAR had full knowledge of this Agreement and received a share of the licensing royalties.   Such awareness is further  made most obvious by Defendants later acts  to undermine it through postings on the MMAR website and threatening contacts with the licensee, which eventually caused Wolverhampton to breach and abandon it.

48.     The Morisky Defendants established a pattern of improperly interference in numerous ways.  First by directly  contacting  and disparaging Plaintiff and insisting that the contract subject matter  (the Morisky Widget and its protocol) was no longer available for medical use.

49.     On information and belief Defendants interfered by causing Wolverhampton to replace  in their published works  an acknowledgement  crediting Defendants-not Plaintiff- under the Agreement (  "the Fraudulent Acknowledgement').[2] The insertion of the Fraudulent Acknowledgement  is simply

---

[2] As to the fraudulent acknowledgement, on February 2021, Wolverhampton published a thesis based on the results of the Study entitled "The impact of mental ill health on medication adherence level in patients diagnosed with type 2 diabetes" (the "Thesis") on its open repository website. A true and accurate copy of the Thesis, located online at https://wlv.openrepository.com/handle/2436/624763.  On September 10, 2021, Plaintiff approved Wolverhampton's use of an acknowledgement to MMAS and Steve Trubow for

an intentional misrepresentation perpetrated by Defendants to discredit Plaintiff and disingenuously credit themselves for actions under contractual agreement they were never part of.

50.     And following this, Defendants engaged in other improper efforts that ultimately caused licensees to breach, then abandon the license and its associated medical program . Exhibit 2 Statement of Steve Trubow.

**E. A Continued campaign of Misinformation and Disparagement by the Morisky Defendants through Postings and Direct Contacts**

51.     A pattern of continuing disparagement and falsehoods about "phasing out the Morisky Widget." Starting on or about October 30, 2021, defendants Donald Morisky, Philip Morisky, and MMAR under the title "Significant legal developments with phasing-out the Morisky Widget," posted the following statement on www.moriskyscale.com (the MMAR Website"):

> *"Effective November 2021, I have phased-out the Morisky Widget. Under the settlement agreement with Steven Trubow, MMAS Research LLC was required to transfer the Morisky Widget (all MMAS 4 and 8 derivatives) to Dr. Morisky by September 2021. The derivatives include the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub- licenses, and copyright registrations relating to*

support. Following that, about December 1, 2021, Wolverhampton published the results of the same study in a second article entitled "Impact of Mental Ill Health on Medication Adherence Behavior in Patients Diagnosed with Type 2 Diabetes". However credit for that same study contained a fraudulent acknowledgement to Defendants.

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

*MMAS4 and 8 widget software that bear the name Morisky, etc. "While, Steven Trubow has very limited authorization to investigate and pursue infringement cases prior to December 2020, his involvement will completely terminate in 2023. I remain the sole developer/owner/licensor of the Morisky Medication Scales 4 and 8. "We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform - within the next 45 days. You may receive an email from Philip Morisky, CEO of MMAR LLC, if you would like to commence the process. The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPAA). You can reach us on our website at www.moriskyscale.com. "Thank you very much for your understanding and cooperation as we transition widget licenses into our company's operations. Dr. Donald Morisky President MMAR, LLC"* [3]

---

[3] There were numerous occurrences of this communication trying to cancel Plaintiff out as well as change subject matter of already executed contracts. It happened again on December 26, 2021, Defendants Donald Morisky, Philip Morisky, and MMAR under the title "Update on the Morisky Widget Being Phased out of Existence," posted an additional statement on the MMAR Website:

"Effective immediately, the Morisky Widget is being phased out of existence. Under the settlement agreement with Steven Trubow signed December 2020, MMAS Research LLC was required to transfer all MMAS 4 and 8 derivatives to Dr. Morisky by September 2021,including the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub-licenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.

"Steven Trubow has very limited authorization to investigate specific infringement cases prior to December 2020, terminating in 2023. He is not authorized to issue new MMAS 4 and 8 licenses, only retroactive licenses relating to infringement cases. I remain the sole developer/owner/licensor of the Morisky Medication Adherence Scales 4 and 8 and derivatives. *"We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform. Philip Morisky, CEO of MMAR, LLC, will notify Morisky Widget clients of this legal development and assist them in the*

**SECOND AMENDED COMPLAINT**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

52.   The vast majority of the licenses issued  for the Morisky Widget require that all MMAS tests be scored and coded in the Morisky Widget software.  They do not allow licensees "who request it" to score MMAS tests in Defendant's MMAR Platform.  Doing so is a clear breach of the Morisky Widget licenses that are in place.

53.   Also, Defendants  in the above letter commit   "*to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses are in effect.*" Defendants did not have access to the Morisky Widget at this time, nor do they now.  They also were never trained on how to operate the Morisky Widget, which is yet another condition of the CR2A.  Instead, they provided this assurance to  licensees, which they could not even fulfill.

54.   Upon information and belief, on or about October 2021, Defendants Donald Morisky, and Philip Morisky directly contacted Wolverhampton and informed them of the aforementioned post and also  to arrange the Fraudulent Acknowledgment. Upon information and belief, defendants Donald Morisky, Philip Morisky, MMAR did this and improperly directed Wolverhampton to breach the Wolverhampton Morisky Widget and GMRF licenses and replace them with licenses from MMAR and Mark Zimmerman.  However, Defendants' proposed replacement  protocol is defectively abridged and not the genuine, medically approved procedure designed by Plaintiff. An irregular GMRF test on April 22, 2022,  was administered by  Defendant Hana Morrisey for Patient ID Philip.

55.   The abridged GMRF  is problematic on several levels.  First it is diagnostically defective (because it only does a portion of the verification first stage

*transition process to avoid unnecessary infringement claims. Thank you very much for your understanding and cooperation during this transition period.*

Dr. Donald Morisky President MMAR, LLC"  A true and correct copy of the aforementioned post is located at https://www.moriskyscale.com/notice-to-clients#/.

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

that used four medication adherence questions that had been approved by the Morisky party in Exhibit 2 of the CR2A).  Then, the defective  GMRF is not only  a breach of the contract and violation of trade secret that was obviously arranged Defendant Phillip Morisky.  The Wolverhampton License disallows such violations on both medical/diagnostic and proprietary reasons.[4]  Shown below is the GMRF report using the abridged  and disingenuous GMRF protocol  done by Wolverhampton for Defendant Phillip Morisky.



---

[4] Wolverhampton has thus breached the following provisions of its license: "Wolverhampton acknowledges and agrees that Licensor GMRF Software Coding and Scoring criteria are trade secrets of Licensor and, as such, Licensee is forbidden from publicizing the Coding and Scoring criteria in any form without the expressed written consent from Licensor."

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

56.     Additional instances of Defendants interference is the  breach of an agreement with Daiichi Sanyo UK as follows: On November 18, 2021, an agreement was entered into between Plaintiff and  Daiichi Sanyo UK to purchase a license for the Morisky Widget for use in diagnostic assessments.  Under this agreement Daiichi Sanyo received  and successfully used the Morisky Widget plus support and training from Plaintiff.  This agreement  with Daiichi Sanyo  UK is attached as Exhibit 12.

57.     The Daiichi Sanyo UK agreement was derailed by the same kinds of misbehavior described previously, including direct disparaging contacts.  An example of interference with the Daiichi Sanyo UK is shown in a threatening email dated December 3, 2021 from Defendant's attorney Christopher Austin which resulted in breach and abandonment of the contract by Daiichi.  See email attached as Exhibit 13.

58.     Similarly Defendant Phillip Morisky direct emailed to CR2A Exhibit 3 Claimants, Exhibit 2 GMRF Licensees and Exhibit 4 Morisky Widget Licensees to induce them to abandon their claims and cancel their  licenses.

59.     On May 4 2022, Phillip Morisky wrote to Dins Smits a Professor at Riga Stradins University in Latvia about the Universities four year old Morisky Widget license. Phillip Morisky wrote:

"*Thank you Dins for sending these documents…*
 *Unfortunately this (Morisky Widget license) was not signed or even approved by Dr Morisky and unilaterally processed by Mr Trubow illegally. Please immediately discontinue all use of the Widget program and let me know where you are at with your studies*."
See Exhibit 14: Statement of Dins Smits

60.    Merck, Daiichi,  Iqvia, and Mitsubishi all  received similar emails from Phillip Morisky with  a letter from lawyer Christopher Austin that caused them to either cancel their Morisky Widget and GMRF licenses or not settle their claims. See Exhibit 18:MMAS Agreement with Merck;

Exhibit 19: MMAS Agreement with Iqvia: and Exhibit 20 MMAS Agreement with Mitsubishi.

**F. Defendants have made inappropriate, widespread  damaging threats of legal action**

61.    Defendants  stepped up the pressure to undo CR2  Exhibit 2 and Exhibit 4 licensing contracts and Exhibit 3 settlement claims by letters from Defendant's Attorney threatening  litigation.  Beyond  unsupportive and improper, these contacts scared people to abandon past present and potential contractual partners. Christopher Austin wrote:

"Any person that uses or licenses the Morisky Widget without  the express written authorization of Dr. Morisky will be in violation of US Copyright Law. See Exhibit 15, Austin Legal Letter

A copy of this pervasive , extremely destructive threat to Plaintiff's contractual partners  across the board  is attached as Exhibit 15.

62.    This letter which was circulated by Phillip Morisky impacted many existing contractual agreements and caused partners to cancel the relationship and request refunds, or otherwise unravel the diagnostic program provided by MMAS in accordance with what the parties had set up under the CR2 Agreement Exhibits 2, 3 and 4.

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

18
**SECOND AMENDED COMPLAINT**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

63.     In a  letter dated July 29, 2022,  Dr. Laura Ambrosial responds to the legal threat, by cancelling the agreement made with Novartis and requests over 20,000$ in refunds.  See Exh. 16: Novartis Breach Letter.

64.     The losses that Plaintiff suffered from each of these breaches have been tablulated in the Exhibit 17:Declaration of Rodney Watkins.

65.     Because these legal threats were circulated personally by Defendant Phillip Morisky, Defendants informed participation is unquestionable. Such an act by Defendant Morisky illustrates the knowing, intentional effort to undermine and interfere  Plaintiffs contractual relationships.  See also Exhibits 14 statement of Dins Smis and Exhibit 2 Statement of Steve Trubow.

66.     In addition, Defendants have unscrupulously fabricated facts to undermine Plaintiffs ability to obtain legal redress, including perpetrating wrongful statements to attack Plaintiffs standing to sue. See  Exhibit 21: Declaration of Kenneth I Gross; Exhibit 2: Declaration of Steve Trubow.

67.     In sum, Defendants have taken many avenues to tortiously erase Plaintiff's ability to carry out the clear cut authority under the CR2A Settlement Agreement.  Cancelling out Plaintiff seems to be  Defendants' religious-like fervor, intended to instill a negative cancel culture via social media or whatever method may cause damage.

68.     In addition, Defendants tortiously interfered with the protocols listed in Exhibit 2 that Plaintiff  had devotedly created to provide medically beneficial  and successful Morisky Widget protocol and training. Thus the described tortious interference also deprives the public of significant  diagnostic benefits.  See Exhibit 2 Statement  of Steve Trubow

69.     Plaintiff's severe damage and loss of contractual relationships as a result of Defendants ongoing  tortious interference are  a direct and foreseeable consequence of the intentional interference by Defendants Donald Morisky, Philip

19
**SECOND AMENDED COMPLAINT**

Morisky, and MMAR, causing Plaintiff to suffered general, direct, and consequential damages, plus the expenditure of attorney's fees, those damages all in an amount well exceeding $75,000.

Exhibit 17:

A spreadsheet in that Exhibit lists 12 licening agreements that were breached because of the herein described tortous interference.  Those breaches were costly on many levels and Mr. Watkins has tabulated the costs.  Those agreements are largely related to this jurisdiction clause through the parties and through their dispute resolution clauses.    .

70.     Damages from intentional, tortious inference with contract do not have to be precisely calculate if they may estimated with reasonable certainty. Types of damages awarded may encompass lost profits, compensatory or actual  damages, damages to reputation, and future or prospective damages.  An analysis of recovery of compensatory and punitive damages on similar facts (including malice and fraud) comes from the case of Ashai Kasai Pharma Corp. v. Actellian Ltd. 222 Cal App.4th 280 (2013) (wrongful interference with licensing agreement). Similarly, GHK Associates v. Mayer Group 224 Cal. App. 3d 856, where defendants were found to have fraudulently conspired to deprive plaintiff's rights, the measure of damages was analyzed with the aid of a court ordered accounting to determine actual damages. Ultimately the damages awarded included all reasonable losses, costs and expenses plus lost profits suffered by the plaintiff (citing the cases of Conghlin v. Blair  41 Cal 2d.587 (1953) and Alder v. Drudis 30 Cal.2d 372(1947) as to the measures of damages and the inclusion of lost profits.

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

## COUNT 2: UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS LAW

71.     This Count 2 for Unfair Competition is based on and  incorporates and the aforestated facts set forth in this pleading concerning devious practices and fraudulent acts committed by Defendants, said acts being committed  willfully, maliciously, and oppressively, without regard to Plaintiff's legal, and contractual obligations.  Nor were they concerned  about unfairly depriving the public of the significant benefits of the diagnostic tools that had been made available by Plaintiff's licensing program.

72.     California  Unfair Competition law (UCL) (Bus & Prof Code Sections 17200 et seq. broadly outlaws as unfair competition any unlawful unfair or fraudulent business  practice that is unfair, deceptive, untrue, or misleading advertising. The scope of the UCL is broad and clearly encompasses  Defendants deceptive, unfair , unlawful  business practices that have negatively  impacted and substantially damaged Plaintiff  within the meaning of California Business and Professions Code § 17200.

73.     Defendants unfair business practices in this case include fraudulently misrepresenting themselves as the party carrying out Plaintiff's contracts, maliciously undermining the subject matter of executed contracts from the Moriksy widget, to their choice of protocol, misleading advertising, and fraudulently misleading parties about the  contracts that Plaintiff had negotiated in order to create losses for Plaintiff.  Much of this unfair business behavior appears to be a personal vendetta by any means possible.   California case law on UCL lends itself well to these facts of Plaintiffs case, exposing Defendants practices of destroying Plaintiff's established business relationship through untruths. Fraud and sheer lying to steer away the truth about his devoted efforts in supporting valuable medical programs, interfering with  Plaintiff' successful  Morisky Widget medical protocol—and trying

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

to replace it with their less effective approach; wrongly presenting themselves as the responsible party for medical advances, and threatening past and prospective business partners.

74.     Damages from this type of unfair competition, particularly where fraud or intent to mislead is involved, include monetary losses resulting from the unfair business practices, unfair gains made by the Defendants, diminishment in value of Plaintiff's existing assets (here the contracts) and value of the loss of prospective business . Modesto Creamery v. Stanislaus Creamery Co. 168 Cal 289 (1914) is longstanding on principles of recovery for the defendants ill gotten profits from fraud under unfair California competition law.

75.     More recently in 2020, the California Supreme Court discussed the damages that can be awarded under unfair competition law and particularly focused on ordering economic restitution to injured parties in Nationwide Biweekly Administration Inc. v. Superior Court, 9 Cal. 5th 279 (2020).   All actual economic damages are also available for losses from unfair competition where any part of the Defendants conduct is misleading; punitive damages are not available under this count. (See Nationwide at 280).

76.     Appropriate remedies include accounting of Plaintiff's direct contract losses and accounting of Defendants wrongful profits, particularly on a showing of fraud or intent to divert the Plaintiff's business by unlawful means.

77.     Pursuant to California Business and Professions Code §17203, Plaintiff seeks an order from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth herein.

78.     Plaintiff has incurred and will continue to incur damages from loss of contractual fees, training fees, and attorney fees as well as loss of prospective business. One example is a contract with Johnson &Johnson, shown as line 12 in the

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

tabulation of losses. Exhibit 17  The contract was awarded to Defendants rather than Plaintiff;  Defendants did not share the proceeds, representing a loss to Plaintiff in the amount of $50,000.

79.     Additionally, Defendants' correspondence and interactions with licesees put a chilling effect on future licensing revenue.

80.     Plaintiff. In enforcing his rights he also seeks recovery of  attorney fees incurred pursuant to Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants as follows:

1. An Order declaring that defendants Donald Morisky, Philip Morisky,  and MMAR have tortuously interfered with Plaintiff in its efforts to perform the Agreement and a finding that Plaintiff has been damaged by the acts by defendants Donald Morisky, Philip Morisky, and MMAR;

2. Order that Defendants have engaged in Unfair Competition under California Law to account for and disgorge to Plaintiff all profits derived by Defendants from their unlawful acts;

3. For compensatory damages in an amount  of over $500,000 according to proof at trial;

4. For costs of suit herein incurred;

5. For attorneys' fees;

6. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

7.  For such other and further relief the Court deems just and proper.

8. Plaintiff demands a jury trial on all issues so triable.

Respectfully,
Date: February 24, 2023

By:  */s/ Michael Chen*
Michael Chen, Esq.
Attorneys for
Plaintiff MMAS RESEARCH LLC,

**MICHAEL CHEN LAW OFFICE**
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

24
**SECOND AMENDED COMPLAINT**

**List of Exhibits**

**Exhibit 1: CR2A Settlement Agreement**

**Exhibit 2: Statement of Steve Trubow**

**Exhibit 3: Global Medical Reconciliation Form ("GMRF")**

**Exhibit 4: Copyright Registration for Morisky Widget**

**Exhibit 5: Wolverhampton License Agreement**

**Exhibit 6: Email from Wolverhampton thanking MMAS for training and Support website**

**Exhibit 7: Intentionally Left Blank**

**Exhibit 8: Intentionally Left Blank**

**Exhibit 9:Letter from Morisky Counsel Authorizing Claim Settlement and Licensing Program**

**Exhibit 10: Intentionally Left Blank**

**Exhibit 11: Intentionally Left Blank**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

25
**SECOND AMENDED COMPLAINT**

MICHAEL CHEN LAW OFFICE
2975 Huntington Dr. Ste 101, San Marino CA 91108
www.michaelchenlaw.com |Call: 626.249.2002

**Exhibit 12: Daiichi UK license agreement**

**Exhibit 13: Letter from Daiichi UK re beach of agreement perpetrated by Defendants threats**

**Exhibit 14: Declaration of Dins Smits and attached license agreement between Plaintiff and Riga Strattens which was breached due to Defendants interference**

**Exhibit 15: Austin Legal Threat Letter**

**Exhibit 16: Novartis Breach Letter**

**Exhibit 17:  Spreadsheet for Plaintiffs damages calculation**

**Exhibit 18: MMAS Settlement Agreement with Merck**

**Exhibit 19: MMAS Agreement with IQVIA**

**Exhibit 20: MMAS Agreement with Mitsubishi**

**Exhibit 21: Declaration of Kenneth I Gross**

**SECOND AMENDED COMPLAINT**